CAROLINE DONOVAN *vs.* THE PRESIDENT AND
DIRECTORS OF THE FIREMEN'S INSURANCE
COMPANY OF BALTIMORE.

*Construction of the Act of* 1864, *ch.* 391—*Tax on
Stocks of Incorporated Institutions — Dividends
— Estoppel.*

By the Act of 1864, ch. 391, a bank or other incorporated institution
located in Baltimore, having stockholders residing in that city and
also in the several counties of the State, may agree with the Appeal
Tax Court to pay to the city its taxes upon an agreed amount of stock
held by residents of the city, and with the County Commissioners to
pay the county taxes upon an agreed amount of stock held by the resi-
dents of each county respectively. If it does so agree with all the
several local authorities, where any of its stockholders reside, it is then
exempted from the duty of furnishing a list of its stockholders to any
of these authorities, but if it thus compound with the city alone, it is
still bound to furnish a list of its county stockholders to the several
county authorities; the exemption only extends to the city and county
with which the composition may be made.

Each share of stock in such institutions is entitled to an equal amount
of its earnings, in the shape of dividends, and when the corporation
undertakes to pay taxes under the Act of Assembly, for its stockhol-
ders, this rule of equality must not be violated. The taxes paid cannot
be taken as an item of general expense to be deducted before the divi-
dends are struck; and where taxes are paid for any set of local share-
holders under the agreement allowed by this law, an equivalent must
be paid to others so as to preserve perfect equality of distribution.

D, the largest stockholder of the Firemen's Insurance Company, resided
in Baltimore up to the period of his death; his widow continued to re-
side there for sometime afterwards, until August, 1861, when she re-
moved to Baltimore county; about the same time, as executrix of her
husband, she transferred the stock to her own name, as his legatee; she
gave no notice to the company of her change of residence, and the Pre-
sident of the company never knew of her having removed from the city
till the first part of the year 1867, and had no reason to believe until
that time, she was not a resident of the city; she collected in person at
the office of the company in Baltimore, the dividends declared from
time to time, including those of the years 1864, 1865 and 1866; when
these dividends were declared, the company announced them in the

newspapers of the city, as so much per share, "clear of all taxes," and she was not called on in the county to pay taxes for these years. The company during the years 1864, 1865 and 1866, availed itself of the privilege given it by the Act of 1864, ch. 391, and commuted with the tax authorities of the city of Baltimore, for the payment of the city taxes upon stock held by residents, or supposed residents of the city. The company having no knowledge of her change of residence, included her stock in the city list and commuted for it as stock held by a citizen of Baltimore. The company deducted all the taxes from their earnings before declaring their dividends and paid the latter "clear of all taxes." The city taxes were much heavier than those of the county. Upon a bill filed against the company to recover the difference, HELD:

That due diligence as well as good faith, required the complainant to notify the company of her change of residence and to assert her rights at the time the first dividend complained of, was declared and paid to her; that having failed to notify the company of her change of residence, and having received the dividends without protest or complaint, with knowledge or imputed knowledge of her liability to taxation as to this stock in the place of her residence and not in the locality from which she had removed, of the lower rate of taxation in the former, and of the effect of the Act of 1864, ch. 391, upon her rights in this respect, her claim against the company could not in equity and good conscience be sustained.

APPEAL from the Superior Court of Baltimore City, in Equity.

The bill of complaint in this case was filed by the appellant on the 31st day of May, 1867, against the appellee.

Joseph S. Donovan was the largest stockholder of the appellee, and had so been for a long time before his death, which took place some six or seven years before the filing of the bill in this case. He resided, till his death, in the city of Baltimore, where his widow, the appellant, continued to reside till August, 1861. On the 26th of August of that year, being executrix and sole legatee of her husband, she transferred her stock to her own name, and about that time removed to Baltimore county. She never gave notice to the company of her change of residence, and the president testified that he never knew of her having removed from the city, till about a year before the bill in this cause was filed. She collected in per-

son at the office of the company in Baltimore, the dividends declared from time to time, including those of the years 1864, 1865 and 1866: and the president proved that till the first part of the year 1867, he had no reason to believe that she was not a resident of the city. When the dividends referred to were declared, the company announced them in the newspapers as $2 per share, " clear of all taxes," and the appellant received them after and in pursuance of such notices; she was not called on in the county to pay the taxes for 1864, 1865 and 1866. The appellee during those years availed itself of the privilege given by the Act of 1864, ch. 391, to commute with the tax authorities of the city of Baltimore, and did so commute for the payment of the city taxes upon stock held by residents (or supposed residents) of the city. Having no knowledge of the appellant's change of residence, the officers of the corporation embraced her stock in the city list, and commuted for it as stock held by a citizen of Baltimore. They then deducted all the taxes (as if an item in their expense account) from their earnings, before declaring their dividends, and paid the latter " clear of all taxes." The appellant's receipts from her stock were thus less than they would have been, if the dividends had been declared on the earnings and every stockholder left to pay his own taxes, or than they would have been if the company had settled for her stock as county stock, the county taxes being less than those payable in the city. By this diminution of her dividends the appellant conceived herself aggrieved, and filed her bill of complaint to compel the company to make up the difference.

The appellee in its answer alleged, first, that under the provisions of the Code, it was clothed with full power and authority to settle for all local taxes, whether city or county, with the tax authorities of the city, " where the corporation is situated," and without reference to the domicil of its shareholders: and, secondly that the appellee had no notice whatever of the appellant's change of residence, while she, on the other hand, was cognizant of the mode in which the dividends

were declared, had full notice by the advertisements, that they were paid tax free, and was estopped by collecting such dividends with such knowledge, from making any reclamations on the company, even if the Court should think that otherwise she would be entitled to relief.

The Court below (DOBBIN, J.) while holding that the stock of the appellant was only taxable in the county, the place of her residence, dismissed the bill upon the ground, that she was presumed to know that the appellee had paid the taxes to the city, and having failed to protest against such payment, she could not in equity and good conscience ask the company to pay to her the money which she had thus seen, without objection, improperly paid away.

From the decree dismissing the bill, the present appeal was taken.

The cause was argued before BARTOL, C. J., STEWART, GRASON, MILLER and ROBINSON, J.

*George H. Williams,* for the appellant,
Referred to the following authorities: *Insurance Co. vs. Mayor, &c. of Baltimore,* 23 *Md.,* 296; *Archbold's Nisi Prius,* 49 *Law Lib.,* 196, 197; *Cumberland Coal and Iron Co., vs. Sherman et al.,* 20 *Md.,* 117, 134; *Stewarts's Case,* 1 *Law Reports,* 587.

*L. L. Conrad* and *S. Teackle Wallis,* for the appellee, referred to the following authorities:
*Tongue's Lessee vs. Nutwell,* 17 *Md.,* 230; *State of Louisiana vs. Bank of Louisiana,* 6 *Louisiana Rep.,* 763; 18 *Howard,* 343, 344; *Act of* 1864, *ch.* 391, *Code, Art.* 81, *secs.* 95, 96, 97, *and the Act of* 1825, *ch.* 55, *sec.* 16.

MILLER, J. delivered the opinion of the Court.

We are all of opinion that the position assumed by the appellee, that the Act of 1864, ch. 391, amending section

97 of the 81st Article of the Code, read in connection with sections 95 and 96 of the same Article, clothed the company with full power and authority to settle for all local taxes, whether city or county, with the tax authorities of the city where the corporation is situated, without reference to the domicil of its shareholders in other parts of the State, cannot be sustained. The construction of the law in this respect is this : Permission is given any bank or other incorporated institution to agree, in any year, with the County Commissioners or Appeal Tax Court to pay the city and county taxes on such amount of stock liable to city and county taxation respectively, as may be agreed upon between the corporations and these respective tax authorities, thus relieving the latter from resort to the individual stockholders. In other words, and to illustrate our views, a bank located in Baltimore, having stockholders residing in that city, and also in the several counties of the State, may agree to pay to the city its taxes upon an agreed amount of stock held by residents of the city, and to the several county authorities, county taxes upon an agreed amount of stock held by the residents of each county respectively. If it does so agree with all the several local authorities, where any of its stockholders reside, it is then exempted from the duty of furnishing any list of its stockholders to any of these authorities, but if it thus compound with the city alone, it is still bound to furnish a list of its county stockholders, to the several county authorities ; the exemption only extends to the city and county with which the composition may be made. It was not the design of these provisions of the Code, or of this Act, to change the rule of law that personal property follows the *situs* of its owner, or to deprive the local authorities of the several counties and city of their taxes on stock held by their respective citizens in such institutions, or to compel them to receive and collect such taxes otherwise than from the individual or corporation itself, or to subject the citizens to any other or higher rate of local taxation in respect to such stock,

than that imposed by the tax authorities of the county or city in which they may reside. It is also very clear that each share of stock, in such institutions, is entitled to an equal amount of its earnings in the shape of dividends, and when the corporation undertakes to pay taxes under this law for its shareholders, it must see that this rule of equality is not violated. The taxes paid cannot be treated as an item of general expense, to be deducted before the dividends are struck; and where taxes are paid for any set of local shareholders, under the agreement allowed by this law, an equivalent must be paid to others, so as to preserve perfect equality of distribution. It follows from this construction of the law and these considerations, that payment of the higher rate of city taxes on the stock held by the appellant in this institution, whilst she was a resident of Baltimore county, or including her shares in the amount on which the appellee agreed to pay city taxes for city shareholders, was erroneous and in violation of her rights, and if there were no other defence to her claim, she would be entitled to relief.

But the answer denies that the respondent had any notice or knowledge of the complainant being a resident of Baltimore county during the years in which the dividends complained of were declared; on the contrary it is averred that her husband under whose will she derived this stock was a resident of Baltimore city, and taxed therein at the time of his death, and respondent not having been otherwise notified or advised, continued to regard his widow as of the same domicil, and in good faith dealt with her stock in regard to the taxes thereon as if she were as her husband had been, properly taxable by the city authorities: that during the whole period to which the complaints of the bill apply she was fully aware of the mode in which the dividends of the company were declared and the taxes provided for prior to the declaration thereof, and that she is not therefore entitled to relief even if the proceedings complained of were irregular. The proof shows that her husband long before his death was the largest stock-

holder of the appellee and resided in Baltimore city up to the period of his death some six or seven years before this bill was filed; that the complainant, his widow, continued to reside there till August, 1861, when as executrix of her husband she transferred the stock to her own name as his legatee and about the same time removed to Baltimore county; that she gave no notice to the company of her change of residence, and the president of the company testified that he never knew of her having removed from the city till the first part of the year 1867, and had no reason to believe until that time she was not a resident of the city; that she collected in person at the office of the company in Baltimore city, the dividends declared from time to time, including those of the years in controversy; that when these dividends were declared the company announced them in the newspapers of the city as so much per share "clear of all taxes." There was also proof tending to show the appellant had not been called upon in the county to pay taxes for these years.

Under such circumstances we are of opinion the appellant cannot in equity and good conscience sustain the claim she now asserts. She must be regarded as having acquiesced in the declaration and payment of these dividends after deduction of city taxes, in the mode of which she now complains, with knowledge, if not actual, at least such as the law will impute to her, of the fact that the company by so doing were paying away money to which she had a rightful claim. She stood by and permitted this to be done without protest or objection. The city taxes on this stock were voluntarily paid by the company in good faith under the impression the appellant still continued a resident of the city. We do not perceive the city is under any legal obligation to refund them to the company. The Appeal Tax Court upon application might, if they chose, refund them as taxes paid in error, but nothing short of a plain legal remedy easily enforcible and in the power of the company now to enforce it to recover back this money, can relieve the appellant's claim from the imputa-

tion of an inequitable demand. She was bound, as well as the appellee, to know the law of 1864, that under it the company had authority to compound or commute for taxes on her stock, and how this law affected her rights after her removal to Baltimore county. She knew she had been taxed for this stock in the city whilst she resided there, and also knew or was bound to know the relatively lower rate of taxation in the county. Due diligence as well as good faith required her to notify the company of her change of residence, and to assert her rights at the time the first dividend now complained of was declared and paid to her. Her failure to do this and her silence when receiving the dividends from year to year, may result in irretrievable loss and injury to other shareholders if her claim is now sustained. Whilst it cannot be said she had constructive notice that these dividends were declared "clear of all taxes" merely because advertisements so stating were published in the newspapers, yet, in the absence of proof that any other notice of the time they were payable was given, in connection with the fact that she regularly and promptly claimed them in person at the company's office, the inference is very strong she must have seen these advertisements and thus had actual notice of their contents. We do not, however, rest our decision upon this ground or upon any knowledge to be imputed to her from having seen these advertisements, but upon the ground of her failure to notify the appellee of her change of residence, her receipt of the dividends without protest or complaint, with knowledge or imputed knowledge of her liability to taxation as to this stock in the place of her residence and not in the locality from which she had removed, of the lower rate of taxation in the former, and of the effect of the Act of 1864 upon her rights in this respect.

It has been argued the appellee was bound to have made inquiry as to the appellant's residence, because of the duty imposed by the law of 1864, to furnish a list of its stockholders to the several county and city authorities. But this

law requires the president, or other proper officers of such institutions, to furnish annually, to the Appeal Tax Court or County Commissioners of each county or city in which any of its stockholders may reside, a list of said stockholders only "so far as their place of residence may be known to such officer," and there would be more force in this argument, if there were any proof in the record of any fact tending to put the officers of the appellee upon inquiry or giving them any reason to infer a change of residence, and if the appellant herself had not, by her own conduct in receiving her dividends in person at the company's office in the city, led them to suppose she still continued to reside there. But the fact that the officers of the company may have neglected their duty in this respect, furnishes no excuse for the appellant's own *laches* and acquiescence in the erroneous payment of these taxes, and can have no effect in sustaining her present demand.

The proof shows the company, upon being informed of her change of residence, promptly omitted to include her stock in the amount subject to city taxation, and we can see no ground upon which the bill can be sustained in respect to any part of the relief prayed therein, and the decree dismissing it must therefore be affirmed.

*Decree affirmed.*

(Decided 17th February, 1869.)