(Decided April 1st, 1898).

---

## MARY LOWNDES *vs.* J. WILKINS COOCH, Executor of NATHAN H. CLARK.

*Conflict of Laws—Bequest of Personal Property Governed by Law of Testator's Domicile—Bequest of Shares of Stock—Lapsed Legacies.*

The construction and effect of a will by which personal property is bequeathed is governed by the law of the testator's domicile, and not by that of the place where the property is located.

The devolution of title to shares of stock of a corporation is governed by the law of the owner's domicile upon his decease, and not by that of the *situs* of the corporation.

Shares of stock in a Maryland corporation were bequeathed by the will of the testator, living in another State, to a party who died before the testator. Under the law of that State, such a legacy lapsed and became void by the prior death of the legatee; while in Maryland, such a legacy is saved from lapsing by virtue of a statute. *Held*, that the bequest is governed by the law of the testator's domicile, and that the legacy lapsed.

Appeal from a decree of Circuit Court No. 2, of Baltimore City (STOCKBRIDGE, J.)

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ. (Jan. 27 and 28, 1898).

*Michael A. Mullin* and *Alfred Bagby, Jr.*, for the appellant.

The sole question in this case is : Will the Court in determining whether or not the legacy to Andrew J. Lowndes lapsed, apply our own law or that of Delaware ? It will be conceded that the Maryland law governs if the stock in question is immovable property. If the Delaware law is to control it is because the Court will extend comity to the foreign law in recognition of the doctrine that personal property follows the person. Courts usually follow this doctrine, but it is a mere fiction of law and must yield whenever justice or public policy in the particular case so requires. It is far from universal in its application. The question in this case is not as to the general doctrine, but first, whether it is applicable when the particular kind of personalty is *shares of national bank stock*, and second, even if the above doctrine is primarily applicable, whether comity will be extended the foreign law in a case (1) where hardship would be worked on citizens of this State; (2) where the policy of our own law, determined by the positive provisions of the statute enacted nearly a hundred years ago, to correct the harsh rule of the common law, and ap-

proved and enforced by our Courts ever since, would be
infringed and annulled, and (3) where the legacy would be
diverted into channels not contemplated by the testator,
when the state of the Delaware law is due not to statutory
provision but to the prevalence there of the common law,
which has been expressly changed in Maryland.

In such a case there is no sound reason of law or public
policy to prevent the rule by which it is sought to make the
Delaware law applicable being strictly construed, but there
is strong reason to the contrary. The actual *situs* of shares
of stock is that of the corporation. *Tappan's case*, 19
Wallace, 503; *Town of St. Albans* v. *National Car Com-
pany*, 57 Ver. 81; *Street Railway* v. *Morrow*, 87 Tenn.
477 *ff.* The certificate is not the stock any more than a deed
is the property the ownership of which it evidences. It is
not negotiable. *Watson* v. *Woody*, 56 Mo. Appeals, 151.
Attachment is a proceeding *in rem*, and stock can be at-
tached only at the domicile of the corporation. *Winslow*
v. *Fletcher*, 53 Conn. 390. In *Patterson's case*, 50 Md. 366,
367, the Court say that property of a non-resident cannot
be taxed here " unless it has an actual *situs* within this
State." But stock owned by a non-resident in a Maryland
corporation is taxable here. *Mayor and C. C.* v. *Baltimore
City P. Ry. Co.*, 57 Md. 31 ; *American Coal Co.* v. *County
Commissioners*, 59 Md. 185. Our statutes providing for at-
taching and taxing stock at the domicile of the corporation
are not in derogation of the common law. At common
law stock was not attachable ; and our statutes provide for
taxing stock held by residents of this State in non-resident
corporations as well as that held in Maryland corporations
by non-residents.

Accurately, the fiction of law with which we are con-
cerned is not *personal property*, but *movables* follow the per-
son—*mobilia sequuntur personam.* The legal term "movable"
is used in its popular sense. See that word in the Encyclo-
pedia of the Law and Black's Law Dictionary, but especially
*Strong* v. *White*, 19 Conn. 238, 245. Leasehold property

is not "movable," and its testamentary disposition is governed by the *lex situs*. Servitudes and easements are immovable, as also permanent ornaments and fixtures, and "all personal property which becomes fixed, either by operation of law or by express determination of the owner" (e. g. heirlooms, farming implements and machinery), or whenever it becomes "permanently located." *Wharton on Conflict of Laws*, sections 567 *a*, 297 *ff*, 302 ; *Story on Conflict of Laws*, sections 447, 382 ; *Rorer on Interstate Law*, page 271 ; *Pullman* v. *Pennsylvania*, 141 U. S. 31 ; *Harper* v. *Starbourgh*, 2 La. An. 381.

Now, what is stock? It is not a chattel ; nor is it, strictly speaking, a *chose in action*. It is a proportionate interest in a corporation and its business. The shares represent the corresponding proportion of the corporate property. *Tax Cases*, 12 Gill & Johnson, 117 ; *County Commissioners* v. *Farmers', &c., Bank*, 48 Md. 115. A corporation cannot migrate ; it must dwell in the place of its creation. Can it be questioned that the interest in a bank which its shares represent is just as permanently and truly fixed at the bank as is the interest in land represented by leasehold or an easement fixed where the land is? Neither can exist independent of that to which it is attached. The shares are taxable and transferable at the bank. All legal proceedings against them must be instituted there. *Cook on Stock and Stockholders*, section 12. By the law of the bank's domicile only, the rights and liabilities of stockholders are determined. *Glenn* v. *Clabaugh*, 65 Md. 65. The stock must be voted at the bank ; the dividends are payable there. As to the *situs* of shares of stock, and whether they are movable property, see *First National Bank* v. *Daniel Smith*, 65 Ill. 55 ; *Street Railway* v. *Morrow*, 87 Tenn. 428. *Debts* are not permanently located in the sense in which shares of stock are. The debt is to be collected, and the debtor may remove to another jurisdiction. The *Patterson case* in 50 Md. is easily distinguishable from the case at bar. It was a *tax* case, and the property in

question was *bonds*—which are property in themselves, thus differing from shares of stock. *Story on Conflict of Laws,* sec. 383, note 1 ; *Street Railway* v. *Morrow,* 87 Tenn. 428; *Beers* v. *Shannon,* 73 N. Y. 299. In the *Gill case* (50 Md. 377), the *situs* of shares of stock is not discussed in the Court's opinion, which was based largely on the decision in the *Patterson case,* in which *bonds* were concerned. In the *Gill case* it was conceded in the argument that the stock in the non-resident National banks was not taxable. It is submitted, therefore, that the question as to the legal *situs* of shares of stock is as yet *res integra* in Maryland—certainly for other purposes than taxation. At the present day, when personalty, consisting largely of stock in corporations, constitutes by far the greater portion of property, it is not wise public policy to administer the law of the domicile regardless of other considerations. *Pullman* v. *Pennsylvania,* 141 United States, 22 ; *Wharton on Conflict of Laws,* sec. 305 ; *Story, Idem.,* note *a,* page 543.

If the Court should hold that the *situs* of the stock is in Delaware, the further question arises : Will comity be extended the foreign law in such a case as the present ? Exceptions to the maxim, *mobilia sequuntur personam,* have become numerous, and each case " should be decided on its merits, uninfluenced by the maxim." *Story on Conflict of Laws,* sec. 383, note *a,* page 543. The fiction yields to the ends of justice in the particular case. *Pullman* v. *Pennsylvania,* 141 United States, 22 ; *Graham* v. *First National Bank,* 84 New York, 393 ; *Warner* v. *Jaffray,* 96 New York, 254–5 ; *Street Railway* v. *Morrow,* 87 Tenn. 428 ; *Green* v. *Van Buskirk,* 7 Wallace, 150. Nor is comity extended, if to do so would conflict with our own laws or public policy. *Bingham's Appeal,* 64 Penna. Stat. 349 ; *Harper* v. *Starbough,* 2 La. An. 377 ; *Townsend* v. *Coxe,* 151 Ill. (1894), 62 ; *Hervey* v. *Rhode Island,* 93 U. S. 671; *Rorer on Interstate Law,* pages 6, 7, 271. Nor will comity be extended when to do so would be prejudicial to the interest of citizens of this State. *Paine* v. *Lester,* 44 Conn.

196; *Hoyt* v. *Thompson*, 19 N. Y. 225; *Guellander* v. *Howell*, 35 N. Y. 658; *Rorer on Interstate Law*, pages 7, 271; *Woodward* v. *Roane*, 23 Ark. 527; *Schouler on Exrs. and Admrs.* page 23. "Comity yields to the local obligation of protecting domestic rights as against foreign."

It is not by virtue of any statute of Delaware that the defendant demurs, but because the common law, in the absence of statute, prevails there, and the common law has been expressly abolished by our statute. Our Court will not enforce the common law when our statute says it shall not be enforced. *Rorer on Interstate Law*, pages 270, 271; *Wells* v. *Wells*, 35 Miss. 667; *Still* v. *Woodville*, 38 Miss. 651–2; *Keller* v. *Paine*, 107 N. Y. 89; *Loftus* v. *Farmers', &c., National Bank*, 133 Penna. 112. In *Corrie's case*, 2 Bland, 499, after stating that a will of movables is presumed to refer to the law of the testator's domicile, the Court adds: "Recollecting, however, that no testamentary act or disposition can be allowed to contravene any known rule of our own law." *Gardner* v. *Lewis*, 7 Gill, 392, 395; *Wilson & Co.* v. *Carson & Co.*, 12 Md. 75.

*Why* do the Courts ordinarily follow the maxim *mobilia sequuntur personam*, and *on what principle* is comity extended the foreign law? In case of wills, it is partially because it is often necessary that the whole estate, including specific legacies, be collected and massed for the payment of creditors. This reason does not apply in the case at bar. (See bill, paragraph 9). Moreover, ordinarily *the testator's intentions will be carried out* if the will is governed by the law of his domicile only. He cannot be expected to know the laws of the various States; and were the provisions of the will ordinarily controlled by the law of the various places where the property happens to be located, his intentions would frequently be annulled and hardship worked. *Schouler on Exrs. and Admrs.* sec. 16.

If, then, in any particular case it is made to appear that not justice, but hardship will be effected by enforcing the rule, that instead of carrying out the testator's intention, the

legacy will be diverted into channels never contemplated by him, in such a case to enforce the rule would bring about that very result to prevent which the rule itself exists. *Chamberlain* v. *Chamberlain*, 43 N. Y. 424. "If the legatee, whether a natural or artificial person and whether he takes in his own right or in trust, is capable by the law of his domicile to take the legacy  *  *  *  and the bequest is in other respects valid, it will be sustained, irrespective of the law of the testator's domicile." *Sickles* v. *New Orleans*, 80 Fed. Rep. 868 ; *Kerr* v. *Dougherty*, 79 N. Y. 327 ; *Wharton on Conflict of Laws*, sec. 553. See especially the comparatively recent cases of *Walton* v. *Hall*, 66 Ver. 460 ; *Hope* v. *Brewer*, 136 N. Y. 138.

*Randolph Barton* and *Randolph Barton, Jr.* (with whom was *Skipwith Wilmer* on the brief), for the appellee.

ROBERTS, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court No. 2, of Baltimore City, sustaining a demurrer to the bill of complaint and dismissing the same. The facts are, that Nathaniel H. Clark, a resident of the State of Delaware, departed this life on the 18th of March, 1892, leaving a last will and testament, by which he bequeathed to his brother, Moses Clark, the dividends to accrue upon the stock held by the testator in the Commercial and Farmers' National Bank of Baltimore, during his life, and thereafter the said stock was bequeathed to his "friend, Andrew Lowndes, of Baltimore." Mr. Lowndes died on the 16th of March, 1892, two days prior to the death of the testator Clark. The dividends upon said stock were paid to the said Moses Clark, the life-tenant, during his life ; he having only recently died. The children of said Andrew J. Lowndes, subsequently to the death of the life-tenant, assigned all of their interest in said bequest to their mother, who is the appellant in the record of this appeal. This bill is filed against J. Wilkins Cooch, the executor of said testator and

against the said bank, to compel the transfer to the appellant of the stock bequeathed to said Lowndes. The will of the testator has been admitted to probate in the Orphans' Court of Baltimore City and letters testamentary have been granted by said Court to said executor. The bank answered the bill, disclaiming any interest in the controversy, and submitting its rights and liabilities to the order and direction of the Court below. Cooch, the executor, demurred to the bill and whilst relying on the same, he, by way of answer, set up the defence that there is no statute in the State of Delaware similar to that of our own State to save the lapsing of a legacy given by a testator to one dying before him, which is the meaning and effect of sec. 313, Art. 93 of Code.

The leading inquiry, therefore, which this appeal presents is, does the law of Delaware or the law of Maryland control the disposition of the bank stock in controversy here? The facts of this case are few and easily understood, and the law is well settled and free of difficulty. It is undoubtedly true that so far as it can be done consistently with its own interests, one country will respect and give effect to the laws of another. This doctrine finds expression in the legal maxim that *mobilia sequuntur personam*, which is the maxim of our own as of the Roman law, while things immovable are governed by the *lex rei sitæ*. The leading case in this State is that of *Noonan* v. *Kemp*, 34 Md. 73. The facts are briefly, that David Kemp, a citizen of this State, bequeathed to his daughter, Mrs. Noonan, who then resided with her husband in the State of Kentucky, certain distributive portions of his personal estate. Mrs. Noonan survived her father and died in the State of Kentucky, leaving her husband and two children surviving her. No distribution of her father's estate was made until after her death. Her surviving husband claimed the portion which had been distributed to his wife. It was admitted that by the law of Kentucky the surviving husband was entitled to the personal estate of his deceased wife. ROBINSON, J., in delivering the opinion of this Court in that case said: " If there be a

principle of international law settled beyond dispute, it is that the succession to personalty is governed and regulated by the law of the *domicile*, &c." And he quotes approvingly the language of CHANCELLOR KENT, in 2 *Kent's Comm.* 429, where he says, "It has become a settled principle of international jurisprudence, and one founded in a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to and distribution of personal property, wherever situated, is governed by the law of the country of the owner's or intestate's domicile at the time of his death, and not by the conflicting laws of the various places where the goods happen to be situated." JUDGE STORY says: "Be the origin of the doctrine what it may, it has so general a sanction among all civilized nations, that it may be treated as part of the *jus gentium.*" But nowhere is the general doctrine stated with greater force and vigor than by LORD LOUGHBOROUGH, in *Sill* v. *Worswick*, 1 H. Black, 690, where he says: "It is a clear proposition, not only of the law of England, but of every country in the world, where the law has the least semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no *visible* locality, but that it is subject to that law which governs the person of the owner; both with respect to the disposition of it, and with respect to the transmission of it, either by succession or by the act of the party. It follows the law of the person. If he dies, it is not the law of the country in which the property is, but the law of the country of which he was a subject, that will regulate the succession." The principle so admirably expressed, which we have just quoted, finds recognition and support in numerous decisions of this Court. *De Sobry* v. *De Laistre*, 2 H. & J. 191; *Newcomer* v. *Orem*, 2 Md. 297; *Wilson* v. *Carson*, 12 Md. 54; *Hooper* v. *Baltimore*, 12 Md. 464; *Latrobe* v. *Baltimore*, 19 Md. 14; *B. & O. R. Co.* v. *Glenn*, 28 Md. 322.

This doctrine, however firmly established, is nevertheless subject to proper limitation to the effect that if a foreign law

directly violates some recognized principle of public policy, or some established standard of morality prevailing in the forum exercising jurisdiction, the rules of comity will not compel such forum to enforce the foreign law rather than its own, if to do so would be hurtful or detrimental to the interest and welfare of its own citizens. The appellant contends that in the application of any proper test, the law of Maryland and not the law of Delaware, should control the case under consideration, for the reason that the shares of stock, the subject-matter of this controversy, are in their nature, things immovable, and incapable of having any *situs* except that of the corporation of which they are a part; and that in the event the law of Delaware shall be allowed to prevail, the result will be, as heretofore stated, the lapsing of the legacy, contrary to the policy recognized in the law of this State. It is not essential to the merits of this case that we should indulge in extended comments upon the subject of the character of the bank-stock in question or as to what may be its *situs*. It has been variously held by the Courts of other States and text-writers as well, that shares of stock have no *situs* apart from that of the corporations of which they are a part as already stated, but that for various purposes shares of stock may be given an arbitrary *situs*, as in attachment cases or for purposes of taxation. The law in this State has, however, been settled and determined to the effect that shares of stock of a corporation are personal property only, and governed by the law of the owner's domicile. *Donovan* v. *Firemen's Ins. Co.*, 30 Md. 159; *Keyser* v. *Rice*, 47 Md. 212; *Appeal Tax Court* v. *Patterson*, 50 Md. 371; *Appeal Tax Court* v. *Gill*, 50 Md. 377; *Bonaparte* v. *State*, 63 Md. 472; *Baldwin* v. *Washington Co.*, 85 Md. 145; *Kerr* v. *Urie*, 86 Md. 72. Other questions have been argued at the hearing of this case which are not necessary to its determination and we forbear comment upon them. It is only just that we say that the case has been argued with exceptional ability and learning. From what we have said, it follows that the Court below has

committed no error in its decree and we affirm the same with costs.

*Decree affirmed with costs.*

(Decided April 1st, 1898).