McQUILLEN et al. v. NATIONAL CASH
REGISTER CO. et al.
No. 2274.

District Court, D. Maryland.
Dec. 14, 1935.

James Morfit Mullen and R. Contee Rose, both of Baltimore, Md., and Arthur Berenson and Samuel Gottlieb, both of Boston, Mass., for plaintiffs.

James Piper and R. Dorsey Watkins, of Piper, Carey & Hall, both of Baltimore, Md., for National Cash Register Co.

WILLIAM C. COLEMAN, District Judge.

The objects of the present suit as set forth in the amended bill of complaint, briefly summarized, may be described as: (1) To cause the cancellation of certain stock on the books of the National Cash Register Company, a Maryland corporation, one of the defendants, alleged by the plaintiffs to have been illegally issued to the other defendants, individuals; (2) to enjoin such of the defendants as are officers and directors of the defendant corporation from paying further' dividends on such stock, and to cause restitution to be made to the corporation for such bonuses and dividends as may have been paid thereon to any of the defendants; and, also, restitution of salaries, bonuses, and commissions alleged to have been excessive and illegally paid to certain named defendants; (3) to cause the cancellation of an option given to a certain named defendant in connection with the alleged illegal issue of such stock; (4) to require a general accounting by the defendants for their alleged wrongful acts in connection with the aforegoing; (5) to recover damages from the defendants for the profits realized from, or the injury caused to the company by the aforesaid acts of defendant; and (6) to recover, as general alternative relief, damages from the defendants for such transactions as cannot be enjoined or may not be advantageously or equitably rescinded and canceled, and declared null and void in the defendant company's interests. It is thus seen that all of the causes of action alleged in the bill may be grouped under two general types; first, personal actions against the various individual defendants; and, second, actions in rem against the stock itself alleged to have been illegally issued by and to certain of the defendants.

The National Cash Register Company has filed motions to dismiss the amended bill of complaint in its entirety on various grounds which may be summarized very briefly as follows: (1) Because it fails to state facts sufficient to entitle the plaintiffs to any equitable relief; (2) because the plaintiffs are guilty of laches; (3) because of a misjoinder of parties defendant, contrary to Federal Equity Rule No. 26 (28 U.S.C.A. following section 723); (4) because of plaintiffs' noncompliance with Federal Equity Rule No. 27 (28 U.S.C.A. following section 723), in that the amended bill of complaint expressly alleges that plaintiffs have made no effort to secure action on the part of the stockholders of the company, before bringing the present suit as a derivative action; (5) because no relief is sought against the defendant corporation as such, and none of the other

named defendants has been summoned or has appeared or is within the jurisdiction of this court. In addition, the defendant company has moved to dismiss certain specified portions of the amended bill of complaint on various grounds; some being the same as those which form the basis for the motion to dismiss the amended bill of complaint in its entirety, and for other reasons which it is unnecessary to detail here. The defendant company has also moved, invoking Equity Rule No. 20 (28 U.S.C.A. following section 723), that the plaintiffs be required to furnish a further and better statement of certain parts of the bill of complaint.

The amended bill of complaint is voluminous, contains many redundant statements, and is otherwise open to serious criticism as to form. However, we are not at this time called upon to pass upon this question, nor are we now concerned with whether there is merit in any of plaintiffs' contentions. From a consideration of the entire amended bill of complaint, while relief may be sought against the defendant corporation alone, it would appear that if plaintiffs are entitled to any part of the relief in rem sought, the firm of Dillon Read & Co. and the following individual defendants are indispensable parties defendant to the suit because alleged either to own or to have an interest in some of the stock which plaintiffs assert is a cloud upon the title to their own stock; namely, Frederick B. Patterson, Edward A. Deeds, S. C. Allyn, Ezra M. Kuhns, William Hartman, J. H. Barringer, C. E. Steffey, and Lee Warren James. But the same is not true with respect to the other individual defendants. All the defendants being outside of the Maryland district, and none of them having voluntarily appeared, plaintiffs moved that they, the plaintiffs, are entitled to have all the defendants made subject to the jurisdiction of this court by substituted service pursuant to the provisions of section 57 of the Judicial Code (28 U.S.C. § 118 [28 U.S.C.A. § 118]), which, briefly summarized, makes suits to remove any encumbrance, lien, or cloud, upon title to real or personal property cognizable by the District Court of the district in which the property is situated, regardless of the residence of the parties, and provides process for service of the nonresident defendants by notification outside of the district or by publication. Plaintiffs assert that this statute is directly applicable because the object of the present suit is, among other things, to remove an encumbrance, lien, or cloud upon the title to certain shares of common stock which they hold of the defendant corporation, by causing the cancellation on the books of that corporation of certain other shares of its common stock which are alleged to have been illegally issued; and that once this court has obtained jurisdiction by substituted service upon the absent individual defendants, it may retain and assert that jurisdiction for the purpose of affording to the plaintiffs the various other forms of relief sought by the amended bill of complaint against the various individual defendants.

It thus becomes necessary at the outset to dispose of the question as to whether plaintiff is entitled to have the various individual defendants brought into the suit by substituted service, pursuant to the provisions of section 57 of the Judicial Code (28 U.S.C. § 118 [28 U.S.C.A. § 118]). Hearing of the other motions of the defendant company has been suspended, pending a determination of this question, which is the only question covered by this opinion.

The part of section 57 of the Judicial Code that is material to the question in suit is as follows: "When in any suit commenced in any district court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. In case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order

and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

Thus before section 57 may be invoked, there must exist, in addition to the non-residence of the defendant or defendants sought to be served, the following prerequisites: (1) The suit must be one in which it is sought either to enforce a legal or equitable lien upon, or claim to, the title to real or personal property, or to remove an encumbrance, lien, or cloud upon the title to such property; and (2) such property must actually be within the district where such suit is brought. The first prerequisite appears to exist, because if it be a fact, as alleged in the amended bill of complaint, that the stock of the defendant corporation, which plaintiffs seek to have canceled, has been illegally issued, its existence is a cloud or encumbrance upon the title to the stock which the plaintiffs themselves own. But the other prerequisite must also be found; namely, the existence within the Maryland district of the property, the encumbrance or cloud upon the title to which it is sought to remove. Nowhere in the amended bill of complaint is there to be found any allegation that there is any property, either of the plaintiffs or of the individual defendants or of the defendant corporation, within the Maryland district, except the allegation that the stock, the cancellation of which is sought, has its "situs" in Maryland. Plaintiffs in effect say that unless the stock alleged to have been illegally issued, in derogation of their rights as stockholders of legally issued shares of stock, are canceled, the title to their own stock will remain encumbered and clouded. The defendant company, on the other hand, asserts, that in order to invoke the provisions of section 57, it is necessary to show that the property, the subject of the controversy, is located within the Maryland district; and that at least since the adoption of the Uniform Stock Transfer Act in Maryland in 1910 (Laws 1910, c. 73, as amended Maryland Code Pub.Gen.Laws 1924 and Supp.

1929, art. 23, §§ 51–73½), the stock of the defendant company does not constitute "real" or personal property in the Maryland district, within the meaning of section 57.

Plaintiffs rely largely upon the case of Jellenik v. Huron Copper Mining Co., 177 U.S. 1, 20 S.Ct. 559, 44 L.Ed. 647, decided in 1900. There the facts were that a suit had been brought in the United States Circuit Court for the Western District of Michigan (82 F. 778) by citizens of other states than Michigan against a Michigan mining corporation and various individual defendants, citizens of Massachusetts, who held shares of stock in the corporation. The plaintiffs claimed that they were the real owners of certain shares of stock of the Michigan corporation, but that the officers and directors of the company had engaged in a fraudulent scheme to cancel their, the plaintiffs', stock, and to issue new stock to themselves as pretended purchasers of plaintiffs' stock, under pretended sales for delinquent assessments. In short, plaintiffs sought a decree to remove the cloud upon the title to their shares, and to have an adjudication that they were entitled to them. The lower court held that the Massachusetts defendants were necessary parties to the suit, but declined to allow them to be made parties defendant by substituted process, pursuant to 18 Stat. 470, c. 137, § 8 (now section 57 of the Judicial Code, 28 U.S.C.A. § 118), when they failed to appear. On appeal, the Supreme Court sustained the lower court in finding that the Massachusetts defendants were necessary parties to the controversy, but reversed it on the question of substituted service, holding that for the purposes of section 57 of the Judicial Code, the stock held by these defendants was to be deemed personal property within the district where the suit was brought. The court said (177 U.S. 1, pages 10, 11, 20 S. Ct. 559, 562, 44 L.Ed. 647):

"One of the objects of the present suit was to remove an encumbrance or cloud upon the title to certain shares of the stock of a Michigan corporation. * * * The relief asked was a decree establishing their [plaintiffs] rightful title and ownership; and in order that such a decree might be obtained, the defendants referred to were ordered to appear, plead, answer, or demur; but as they refused to do so, the circuit court decided that it could not proceed further. That court was of opinion that 'the shares of stock in question are

not personal property within the district within the purview of the statute of the United States authorizing the bringing in by publication of notice to nonresident defendants who assert some right or claim to the property which is the subject of suit.' 82 F. 778, 779. The proper forum, the court said, for the litigation of the question involved would be in the state of which the defendants were citizens.

"The question to be determined on this appeal is, whether the stock in question is personal property within the district in which the suit was brought. If it is, then the case is embraced by the act of 1875, and the circuit court erred in dismissing the bill." Then, after quoting and analyzing the applicable Michigan statutes, the court continued (177 U.S. 1, pages 12–14, 20 S.Ct. 559, 563, 44 L.Ed. 647) :

"These provisions make it clear that by the law of Michigan the shares of stock in the defendant company are to be deemed personal. property, transferable on the books of the company; and that the share or interest of a stockholder may be taken in execution or reached by attachment, a copy of the execution or attachment being left by the officer with the clerk, treasurer, or cashier of the company. The authority of the state to establish such regulations in reference to the stock of a corporation organized and existing under its laws cannot be doubted. We need not discuss, in the light of the authorities, whether the shares of stock in the defendant company may not be accurately described as chattels or choses in action, or property in the nature of choses in action. * * * It is sufficient for this case to say that the state under whose laws the company came into existence has declared, as it lawfully might, that such stock is to be deemed personal property. That is a rule which the circuit court of the United States sitting in Michigan should enforce as part of the law of the state in respect of corporations created by it. The stock held by the defendants residing outside of Michigan who refused to submit themselves to the jurisdiction of the circuit court being regarded as personal property, the act of 1875 must be held to embrace the present case, if the stock in question is 'within the district' in which the suit was brought. Whether the stock is in Michigan so as to authorize that state to subject it to taxation as against individual shareholders domiciled in another state is a question not presented in this

cause, and we express no opinion upon it. But we are of opinion that it is within Michigan for the purposes of a suit brought there against the company—such shareholders being made parties to the suit —to determine whether the stock is rightfully held by them. The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicil of- the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner. This principle is not affected by the fact that the defendant is authorized by the laws of Michigan to have an office in another state, at which a book showing the transfers of stock may be kept.

"It is suggested that the requirement in the act of 1875 that a copy of the order of publication 'shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be,' is inapplicable here, because no one in Michigan is alleged in the bill to have possession of the shares in question. But the bill does show that the property represented by the certificates of shares is held by a Michigan corporation, which being subject personally to the jurisdiction of the court may be required by a final decree in a suit brought under the act of March 3d, 1875, to cancel such certificates held by persons outside of the state and regard the plaintiffs as the real owners of the property interest represented by them.

"It is also contended that the words in the act of 1875, 'when a part of said property shall be within another district but within the same state, said suit may be brought in either district in said state,' indicate that the act had reference only to tangible personal property capable of being located in more than one district. This would be too narrow an interpretation of the statute. No reason can be suggested why suits involving the title to shares of the stock of a corporation or company should have been excluded from the operation of the statute. On the contrary, the statute contemplated that there might be cases involving the title to personal property not in the actual manual possession of

some person; for the direction is that the order of the court be served upon the person or persons in possession or charge of the property, 'if any there be.' The corporation being brought into court by personal service of process in Michigan, and a copy of the order of court being served upon the defendants charged with wrongfully holding certificates of the stock in question, every interest involved in the issue as to the real ownership of the stock will be represented before the court."

The breadth of the ruling in the Jellenik Case is obviously controlling of the present suit, unless, as the defendant company claims, the existence of the Uniform Stock Transfer Act in Maryland requires a different result. At the time of the Jellenik decision, 1900, this act was not only not in operation in Michigan, but had not been enacted in any of the states. It became law in Maryland in 1910. The defendant company asserts that the Jellenik decision is a narrow one, resting upon a specific interpretation of the Michigan corporation laws in existence at the time; that the Supreme Court concluded that the laws of Michigan made shares of stock in Michigan corporations personal property in that state only because the state statutes provided that (1) shares of stock in Michigan corporations are personal property, transferable on the books of the company; (2) such corporations had liens upon their own stock for debts due them; and (3) any share or interest of a stockholder could be taken in execution or attachment by leaving a copy of the execution or attachment with an officer of the company in the state; but that in Maryland, since the enactment of the Uniform Stock Transfer Act, there are no provisions of law corresponding to the aforegoing provisions of the Michigan statutes. Thus, the defendant company claims that the Maryland law leads irresistibly to the conclusion that the stock of a domestic corporation does not constitute personal property in the state of Maryland merely because it is the place of incorporation. In support of this contention, the relevant provisions of the Maryland Code known as the Stock Transfer Act are stressed. These sections provide: (1) "Title to a certificate and to the shares represented thereby can be transferred only (a) By delivery of the certificate," properly indorsed, or "(b) By delivery of the certificate and a separate document" of assignment (section 51 [as amended by Laws 1927,

c. 376]); this section being applicable, although the charter or by-laws of the corporation may provide that the shares shall be transferable only on the books of the corporation or by a transfer agent. (2) "No attachment or levy ·upon shares of stock for which a certificate is outstanding shall be valid until such certificate shall be actually seized by the officer making the attachment or levy, or be surrendered to the corporation which issued it, or its transfer by the holder be enjoined. Except where a certificate is lost or destroyed, such corporation shall not be compelled to issue a new certificate for the stock until the old certificate is surrendered to it." Section 63. (3) "There shall be no lien in favor of a corporation upon the shares represented by certificate issued by such corporation, and there shall be no restriction upon the transfer of shares so represented by virtue of any by-law of such corporation, or otherwise, unless the right of the corporation to such lien or the restriction is stated upon the certificate." Section 65.

In short, the defendant company claims that, by reason of the aforegoing provisions in the Maryland law, Maryland has so far identified the property in a share of stock, issued by corporations created pursuant to its laws, with the stock certificate, that the stock, apart from the certificate, does not constitute property within the state of Maryland. However, we do not think that this is an accurate conclusion, because it gives to the provisions of the Uniform Stock Transfer Act an effect broader than that which we believe was actually intended. The true intent of that act is succinctly set forth in the note of the Commissioners on Uniform State Laws, to section 1, which states that: "The reason for the change is in order that the certificate may, to the fullest extent possible, be the representative of the shares. This is the fundamental purpose of the whole act, and is in accordance with the mercantile usage. The transfer on the books of the corporation becomes thus like the record of a deed of real estate under a registry system." 6 Uniform Laws Annotated, p. 2. The defendant company would have us construe the purpose of the act as being much broader, namely,. not merely relating to the negotiability of the certificates, but rather to a determination of the actual character of the stock itself, of which the certificate is the indicia of title. Stock has been variously defined as

quasi property, a contract right, a chose in action, and in many other ways. For present considerations, none of these definitions is really helpful. Nor do we find that the Maryland Court of Appeals has, in any of its decisions, ever been called upon to deal with this precise question, or with the definition of shares of stock in Maryland corporations and their situs, in such manner as to clarify this precise question. It may be assumed that in modern business contemplation the stock certificate is property; indeed, it is the stock itself for all practical purposes, and it is with this concept in mind that the Uniform Transfer Act was adopted. Due to the constant, daily trading in shares of stock by vast numbers of persons, the certificates are not thought of as mere evidence or indicia of title, but are considered as property, because he who controls the certificates controls the shares. They are sold in the market; they are transferred as collateral security for loans; and they are used in various ways as property. They pass by delivery from hand to hand, and may be the subject of larceny. Stock may be said to have its situs in one or more of three places: (1) The domicile of the corporation; (2) the domicile of the stockholder; and (3) the place where the certificate is located. It is the third view, namely, that the situs is the place where the certificate is located, which represents the more modern view, and which, according to the contention of the defendant company, is supported by the Uniform Stock Transfer Act. It will be assumed that in legal contemplation the situs may vary, depending upon the particular circumstances under consideration. That is to say, the rule of law may vary, depending upon whether the question relates to (1) reaching the stock by process of levy or attachment; (2) transfer of its title; (3) fixing its location for the purpose of determining whether it is an asset in administrating a decedent's estate (See Lowndes v. Cooch, 87 Md. 478, 39 A. 1045, 40 L.R.A. 380); and (4) its taxation. Note the language of Justice Harlan in the Jellenik Case, above quoted, that (177 U.S. 1, page 13, 20 S.Ct. 559, 563, 44 L.Ed. 647): "Whether the stock is in Michigan so as to authorize that state to subject it to taxation as against individual shareholders domiciled in another state is a question not presented in this cause, and we express no opinion upon it." But we need not go into a consideration of these separate questions, because the language of the Supreme Court in the Jellenik Case is unequivocally to the effect that the stock under consideration there was declared to be personal property with a situs at the domicile of the corporation. It is to be noted that the Michigan law interpreted in the Jellenik Case, did not in fact declare the stock of Michigan corporations to be personal property at the domicile of the corporation, that is, in Michigan; but simply that such stock "shall be deemed personal property." Thus the court itself actually fixed the situs. And so there remains for determination only the question whether, in the light of succeeding decisions, there is warrant for refusing to apply the Jellenik decision to the present case. We, therefore, pass to a consideration of the later cases.

In Schultz v. Diehl, 217 U.S. 594, 595, 30 S.Ct. 694, 54 L.Ed. 896, decided in 1909, the Supreme Court permitted substituted service, rendering merely a per curiam decision on the authority of the Jellenik Case. In the Schultz Case, it appears that the plaintiffs were minority stockholders of an Oregon corporation, and they sued to prevent its officers and directors from asserting false and fictitious claims against the company on which a judgment had been obtained. Again in 1922, in Critchton v. Wingfield, 258 U.S. 66, 42 S.Ct. 229, 66 L.Ed. 467, the court expressly reaffirmed the Jellenik Case, although on different facts not involving shares of stock. The Court there said (258 U.S. 66, pages 74, 75, 42 S.Ct. 229, 231, 66 L.Ed. 467):

"This court had occasion to consider the statute [section 57 of the Judicial Code, 28 U.S.C.A. § 118] in Jellenik v. Huron Copper Mining Co., 177 U.S. 1, 20 S.Ct. 559, 44 L.Ed. 647, where it was held, in a suit involving title to shares of stock, that foreign service might be obtained in the Circuit Court of the United States for the District of Michigan on adverse claimants to bring in certain alleged owners of shares of stock held by Massachusetts defendants. This was held to be so because the company was organized under the laws of Michigan whose statutes declared that the stock of the company was to be deemed to be personal property. For the purpose of the suit it was decided that the property was within the state of Michigan as the habitation or domicile of the company was within that state, which cre-

ated the corporation, and made the property subject to its laws.

"The appellant insists that the principles declared in that case control here, and cites statutes of New York and Mississippi defining personal property in terms broad enough to include written instruments creating pecuniary obligations. * * *

"We have no disposition to depart from the principle of those cases, but are of opinion that they do not control the present controversy. In our view section 57 of the Judicial Code cannot, under the facts of this case, be made the basis of a departure from statutory enactments which require personal service within the district in order to subject a person to the jurisdiction of a federal court."

As late as 1933, in Rogers v. Guaranty Trust Co., 288 U.S. 123, 53 S.Ct. 295, 77 L.Ed. 652, 89 A.L.R. 720, the Jellenik Case was again relied upon. There it was held proper for the lower court in New York to decline to hear a suit brought by stockholders of a New Jersey corporation, where the controversy depended upon a construction of New Jersey statutes, and where the New Jersey law afforded an adequate remedy. In the course of its opinion the court said (288 U.S. 123, page 132, 53 S.Ct. 295, 298, 77 L.Ed. 652, 89 A.L.R. 720) that, "So far as concerns the cancellation of the allotted shares and other relief sought by plaintiff the situs of the stock is in New Jersey," and cited the Jellenik Case. The Uniform Stock Transfer Act was in effect in New Jersey, and applicable to the stock in question. Section 57 of the Judicial Code was not involved. See, also, Citizens' Savings & Trust Co. v. Illinois Central R. Co., 205 U. S. 46, 55, 27 S.Ct. 425, 51 L.Ed. 703; Louisville & Nashville R. Co. v. Western Union Tel. Co., 234 U.S. 369, 374, 34 S.Ct. 810, 58 L.Ed. 1356; and Rhode Island Hospital Trust Co. v. Doughton, 270 U.S. 69, 82, 46 S.Ct. 256, 70 L.Ed. 475, 43 A.L.R. 1374, in all of which the Jellenik Case was cited.

Apparently, the only reported decision which directly deals with a situation such as the present where the Uniform Stock Transfer Act was involved, is Harvey v Harvey, 290 F. 653, a decision of the Circuit Court of Appeals for the Seventh Circuit. There, the suit was to establish complainant's ownership of stock in a Wisconsin corporation and to restrain various nonresident defendants from voting the same. More specifically, the relief sought by the plaintiff was a decree adjudging a stock deposit agreement void, enjoining all the defendants other than the company from voting any stock in which the plaintiff was interested, and enjoining the company from accepting, receiving, or permitting to be used, votes upon any of such stock in which plaintiff had any interest, except in compliance with plaintiff's rights. That is to say, the theory of the bill of complaint was that the individual defendants in that case, just as in the present case, were conspiring against plaintiff's own interests, with the additional fact that plaintiff in the Harvey Case claimed that he not only owned certain shares of stock in the company, but an undivided interest in certain other shares of which the individual defendants, by an alleged illegal and fraudulent conspiracy, attempted to deprive him. The court said, 290 F. 653, pages 658, 659:

"The essence of plaintiff's suit is the establishment of his right to the stock and its control and to remove a cloud or incumbrance therefrom, and incidentally to restrain the defendants from illegal interference therewith by voting the same or otherwise. Such a suit is in its nature one in rem, affecting property located in Wisconsin, shares of stock in a Wisconsin corporation.

" 'The certificates are only evidence of the ownership of the shares, and the interest represented by the shares is held by the company for the benefit of the true owner. As the habitation or domicile of the company is and must be in the state that created it, the property represented by its certificates of stock may be deemed to be held by the company within the state whose creature it is, whenever it is sought by suit to determine who is its real owner.' Jellenik v. Huron Copper Min. Co., 177 U. S. 1, 20 S.Ct. 559, 44 L.Ed. 647.

"The appellants contend that in view of the fact that in Wisconsin the uniform stock transfer act is in force, and under its provisions shares of stock can be transferred only by indorsement or equivalent writing, and cannot be attached or levied upon until actually seized, the case is taken out of the rule announced, and that under a correct interpretation of the statute the state of Wisconsin has fixed the situs of shares of stock at the residence of their owner. It may be true that the statute mentioned tends to give to shares

of stock qualities partaking of those of commercial paper, but we do not agree that the effect of the statute is to change the situs of the shares, or to deprive the courts of Wisconsin from exercising jurisdiction over stock in a Wisconsin corporation owned by nonresidents. The language of the Supreme Court quoted above indicates the reason for holding that their situs is that of the corporation; that is, that shares of stock represent units or undivided interests in the corporate property, and must therefore have their situs with that of the corporation. They are nothing more than evidence of the holder's title to a certain number of aliquot, undivided interests in the property and franchises of the corporation. The Wisconsin statute contains nothing irreconcilable with the proposition.

"Appellant's contention that the injunction granted relief in personam and therefore cannot be based upon service under section 57, which applies to actions in rem, is not well founded. This suit is in the nature of a suit to quiet title to personal property within jurisdiction of the court. The court has in its custody the res. It puts out its protecting hand and says to the defendants that the plaintiff claims the res; that pending the determination of that claim the statu quo shall be maintained and the defendants restrained from using the res; that if they desire to contest the claim of the plaintiff to this property they shall come into court and do so. Incidental to its jurisdiction over the res, the court may use its power of injunction, not to prevent distinctly personal acts by the defendants, disconnected with the res, but to prevent defendants interfering with, disposing of, converting, injuring, or wrongfully using the res. The power to vote the stock is incidental to and is inseparable from the ownership of the stock."

In the absence of some decision of the Supreme Court clearly indicating that the result reached in the Jellenik Case is not required where the Uniform Stock Transfer Act is in effect in the state of the corporation's creation, we are unwilling to attempt to qualify the full effect of that decision. Therefore, we believe that the decision in Harvey v. Harvey, supra, is a correct, logical sequence to the Jellenik decision, and must be followed in the present case.

As a practical matter, the result would seem to be highly desirable, whether we predicate it upon a so-called tangible location of the shares in the jurisdiction where the corporation is domiciled on the theory that the shares are connected with something tangible there, presumably the transfer books of the corporation, or upon the theory that the shares have a situs at the domicile of the corporation because the law of the state creating the corporation is the proper one to enforce any rights connected with the shareholder's relationship to the corporation. At its domicile, the corporation is required to have an office and statutory agent; and normally is required to hold stockholders' meetings there. In any event, the corporation's domicile is the most logical place in which to reach all those who are involved in disputes over the title or disposition of stock of the corporation, and it is not straining the legal fiction to say that, for such purposes, the stock constitutes a res in that place.

It may be assumed that it is difficult to reconcile completely the theory of the Jellenik Case and of the Harvey Case with some of the decisions of the Supreme Court, dealing specifically with the situs of shares of stock for taxation purposes. See, for example, First National Bank of Boston v. State of Maine, 284 U.S. 312, 52 S.Ct. 174, 76 L.Ed. 313, 77 A.L.R. 1401; Burnet v. Brooks, 288 U.S. 378, 53 S.Ct. 457, 77 L.Ed. 844, 86 A.L.R. 747. But this is a question which lies outside of the present inquiry. Suffice it to repeat that, as we interpret what the Supreme Court has said in the Jellenik Case, and in the later decisions above referred to, it governs the present situation, and has received in Harvey v. Harvey, supra, a proper, logical application to facts virtually identical with those in the present suit.

On behalf of the defendant company, an effort has been made to distinguish some, if not all, of the cases just analyzed on the ground that they involved a direct conflict between the parties litigant as to title to the same stock, and did not involve the further question, here presented, as to the right to issue and own other additional stock. Assuming such factual distinction to exist, it is immaterial because the same principle is applicable to both situations, since both raise the same fundamental questions as to the location of the res, and cloud or incumbrance upon title. In the present suit, all of the stock of the defendant company is to be treated as a res in Maryland, whether we speak of the

stock held by the plaintiffs, or that held by the defendants and alleged to have been fraudulently issued, or both.

A decree will be signed in accordance with this opinion authorizing service upon the following absent defendants, pursuant to section 57 of the Judicial Code (28 U.S. C.A. § 118); namely, Dillon Read & Co., Frederick B. Patterson, Edward A. Deeds, S. C. Allyn, Ezra M. Kuhns, William Hartman, J. H. Barringer, C. E. Steffey and Lee Warren James.