# THE HARFORD MUTUAL INSURANCE COMPANY, ET AL. *v.* BRUCHEY

[No. 46, September Term, 1967.]

*Decided February 8, 1968.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SINGLEY, JJ.

*Thomas Waxter, Jr.* and *Thomas E. Cinnamond,* with whom was *John H. Mudd* on the brief, for appellants.

*John Wheeler Glenn,* with whom were *Leroy W. Preston* and *Edwin F. Nikirk* on the brief, for appellee.

HAMMOND, C. J., delivered the opinion of the Court.

Mr. and Mrs. William Adam Bruchey, III, schoolteachers who live in Frederick, drove into Virginia on April 15, 1965, toward the Skyline Drive and near Luray, in Paige County, Virginia, had a head-on collision with a car driven by Wilbur Adrian Clark, a resident of Virginia and an employee of The Harford Mutual Insurance Company (Harford) of Bel Air, which has a branch office in Richmond and does business throughout Virginia. The car Clark was driving was owned by Hinder Brothers, Incorporated (Hinder), of Aberdeen, which was engaged in the business of leasing motor vehicles.

The State Trooper who took charge of the accident and the independent witnesses are residents of Virginia. Mr. and Mrs. Bruchey were hospitalized in Virginia, she for several months.

Mr. and Mrs. Bruchey filed suit in the Circuit Court for Harford County against Harford and Hinder. Virginia has a statute (Va. Code Ann., § 55-36 (1959 Repl. Vol.)), which provides:

> "A married woman may contract and be contracted with and sue and be sued in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by or against her accrued heretofore or hereafter. In an action by a married woman to recover for a personal injury inflicted on her she may recover the entire damage sustained including the personal injury and expenses arising out of the injury, whether chargeable to her or her husband, notwithstanding the husband may be entitled to the benefit of her services about domestic af-

fairs and consortium, and any sum recovered therein shall be chargeable with expenses arising out of the injury, including hospital, medical and funeral expenses, and any person, including the husband, partially or completely discharging such debts shall be reimbursed out of the sum recovered in the action, whensoever paid, to the extent to which such payment was justified by services rendered or expenses incurred by the obligee, provided, however, that written notice of such claim for reimbursement, and the amount and items thereof, shall have been served on such married woman and on the defendant prior to any settlement of the sum recovered by her; and no action for such injury, expenses or loss of services or consortium shall be maintained by the husband."

The Brucheys' declaration alleges that she is totally and permanently disabled for life and that he "was deprived of the care, companionship and services of his wife * * * from the time of the accident to the present and that he will be without her services for the entire future of her lifetime." The pleadings of Harford and Hinder raised the issue of whether the Virginia law which does not allow a husband to recover for loss of consortium or the Maryland law which does should apply, the defendants asserting that Virginia law controls. Bruchey petitioned the court for a separate trial under Maryland Rule 502 of this separate issue of law, and Harford and Hinder gave due notice pursuant to Code, Art. 35, § 47 (1965 Repl. Vol.) (the Uniform Judicial Notice of Foreign Law Act), of their intention to rely on the statute and case law of Virginia.

Judge Dyer held a separate trial as requested, on a stipulation of the parties which included the stipulation that "the law of the State of Virginia does not entitle Mr. Bruchey to bring any action for medical expenses for Mrs. Bruchey, for loss of her services, or for loss of consortium." The parties agreed, however, that under the Virginia statute, although the wife in her action is to recover "the entire damage sustained including the personal injury and expenses arising out of the injury whether chargeable to her or her husband," including hospital, medical and funeral expenses, nevertheless "any person, in-

cluding the husband, partially or completely discharging such debts shall be reimbursed out of the sum recovered in the action," so that the husband can recover the medical expenses.[1]

Judge Dyer recognized that Maryland has consistently applied the rule that the law of the place of the wrong controls substantive matters, including the measure of damages, but relied largely on cases such as *Ash v. B. & O. R. R. Co.,* 72 Md. 144, *London Etc. Co. v. Balgowan Steamship Co.,* 161 Md. 145, and *Davis v. Ruzicka,* 170 Md. 112. In *Ash* (as in the other cases) the Court was dealing with differences between the wrongful death statutes of Maryland and those of another State, and it found "no reason why statutes of other States * * * should be allowed extra-territorial force and operation, by the Courts of this State." However, in *Texaco v. Vanden Bosche,* 242 Md. 334, 339, we said "that these decisions are sound law today is extremely unlikely in view of subsequent holdings of the Supreme Court," in the light of 28 U. S. C. § 1738, as amended in 1948, providing that "full faith and credit shall be given in each state to the public acts, records, and judicial proceedings of every other state," and *First Nat. Bank v. United Air Lines,* 342 U. S. 396 (1952), and *Hughes v. Fetter,* 341 U. S. 609 (1951), noted in 100 U. Pa. L. Rev. 126 (1952). In holding that Maryland law should prevail to allow Bruchey to recover for loss of consortium, Judge Dyer said:

> "This Court believes that the inconsistency between Section 55-36 of the Married Woman's Act of Virginia and the Maryland provisions and common law, *supra,* with the resultant diminution and change in conjugal rights and duties reflects much more than different measures of damages. The distribution and administration of monetary recovery between a husband and wife, when *interdependent* with the subsequent

---

1. It seems beyond question that the Virginia statute nullifies the right of the husband to recover, directly or indirectly, for loss of consortium and, indeed, forbids his filing suit therefor. Carey v. Foster, 345 F. 2d 772 (4th Cir. 1965); Ford Motor Co. v. Mahone, 205 F. 2d 267 (4th Cir. 1953); Floyd v. Miller, 57 S. E. 2d 114, 116 (Va. 1950).

conjugal rights and duties seem to be policies which should be governed by the law of the marital domicile. This belief is reinforced by the fact that all the parties are domiciled in Maryland, and that the accident occurred on a temporary excursion into Virginia. * * *

"Therefore, the issue posed in this case seems to go beyond the public policy of compensating tort victims, for the interdependency of Maryland's conjugal rights and duties indicates a public policy in favor of continuing this State's marital relationship in a way that has been rejected by the Virginia Legislature for its domiciliaries. By so deciding this case, this Court feels it does no injustice to the policies and laws of Virginia. The Virginia law should govern the issue of liability, for Virginia obviously has the right to determine what standards of driving conduct apply to those who use its highways. And generally, under the original Restatement Rule, *supra*, Virginia law should decide what recovery should be under its remedial laws. But the Virginia Married Woman's Act declares marital policy as well as the measure of tort damages, and to this extent should not be obligatory where its application would change the domestic relations of a married couple domiciled outside Virginia. *A fortiori*, it should not be applied where, as here, it would pluck an integral sheaf from a Maryland couples' bundle of rights.

"The Court recognizes that the Plaintiff has argued extensively for a basic change in the conflict of laws rule for torts, proposing a change to the center of gravity or most significant relationship test. * * * If this were the Maryland Rule today, the Court would have reached substantially the same results."

We do not agree with Judge Dyer. In *White v. King,* 244 Md. 348, we carefully reviewed the criticisms of and the arguments against *lex loci delicti* by courts and commentators and the virtues claimed for substitute rules, such as those labelled "the center of gravity," "grouping of contacts," and "most signifi-

cant relationships," and, suggesting there had not yet been evolved a proved sound practical alternative to the *lex loci delicti,* we observed (at page 355) that:

> "In what we have said, we do not intend any implication that *lex loci delicti* is, in general, in our opinion, an unjust rule. Hardship may result in a particular case, but that, unfortunately, is true under any general legal principle. Certainty in the law is not so common that, where it exists, it is to be lightly discarded. We recognize the force of the countervailing arguments, but in the present state of the law, we leave any change in the established doctrine to the Legislature."

We see even less reason in the case before us to depart from the long established Maryland rule than there was in *White v. King.* This being so, there remains only the question of whether there is extant in Maryland such a strong public policy in favor of recovery by a husband for loss of consortium as to require its courts to refuse to apply the law of a sister State which does not recognize such a right. We find no such strong public policy. In *Texaco v. Vanden Bosche,* we point out that there is a heavy burden on him who urges rejection of foreign law on the ground of public policy, saying (at page 340 of 242 Md.) :

> "Recent legal thinking is that a public policy which will permit a state to refuse to enforce rights created by the law of a sister state must be very strong indeed. See Paulsen and Sovern, *'Public Policy' in the Conflict of Laws,* 56 Colum. L. Rev. 969, 1212-16 (1956) ; Katzenbach, *Conflicts on an Unruly Horse: Reciprocal Claims and Tolerances in Interstate and International Law,* 65 Yale L. J. 1087 (1956) ; Reese, *Full Faith and Credit to Statutes: The Defense of Public Policy,* 19 U. Chi. L. Rev. 339 (1952) ; Sumner, *The Status of Public Acts in Sister States,* 3 U. C. L. A. L. Rev. 1, 25 (1955) ; Carnahan, *What is Happening in Conflict of Laws: Three Supreme Court Cases,* 6 Vand. L. Rev. 607 ; Restatement, *Conflict of Laws* § 612

(1934) ; *Broderick v. Rosner,* 294 U. S. 629, 79 L. Ed. 1100."

*See also* Goodrich, *Conflict of Laws,* § 11, p. 21 (3rd Ed. 1949) ; Restatement *Conflict of Laws,* § 612 (1934).

The husband's right to recover for loss of consortium has been called an "anachronism" and "a fossil from an earlier era," Jaffe, *Damages for Personal Injury: The Impact of Insurance,* 18 Law and Contemporary Problems, 219, 229 (1953) ; Prosser, *Torts,* § 119 (3rd Ed. 1964) ; and "an anachronistic common law rule," *Casey v. Manson Construction and Engineering Co.,* 428 P. 2d 898, 905 (Ore. 1967).

In *Nicholson v. Blanchette,* 239 Md. 168, 183, Judge Barnes for the Court referred to the husband's claim as a "vestigial right." In *Deems v. Western Maryland Ry.,* 247 Md. 95, 107, 108, in disposing of the claim that to deny a wife a right to recover for loss of consortium while granting it to the husband was an invidious and unconstitutional discrimination—a problem we solved by holding that the right was a joint one which must be claimed by both husband and wife—we considered whether a solution would be to deny the right to the husband, and said:

> "To overrule the common-law doctrine and to deny the claim of the husband as well as that of the wife in order to attain equality of treatment between them, as a few courts have done, it seems to us, is to throw out the baby with the bathwater.
>
> "There is a basic and vital reality, which we believe is not sufficiently recognized by the decisions which either grant or deny the wife some right of recovery in the situation we are considering." (Footnote omitted.)

This hardly indicates recognition of a strong public policy in Maryland in favor of recovery for deprivation of consortium.

In *LaChance v. Service Trucking Co.,* 215 F. Supp. 162, 166 (D. Md. 1963), Judge Thomsen was faced with a case in which a wife, a resident of Maine, sued a trucking company which impleaded her husband in the District Court for the District of Maryland to recover losses and damages she sustained in a motor vehicle accident which had occurred in North Carolina, he having been the driver of the car in which she was riding.

Neither Maine nor Maryland allow a wife to sue her husband in such a case. North Carolina does. Judge Thomsen reviewed the line of cases in Maryland, some recent, holding that a wife could not sue her husband, and found:

> "In the light of all the Maryland decisions, I conclude that the Court of Appeals of Maryland would hold that under the circumstances of this case there is no strong policy of the State of Maryland which would prevent the maintenance of [the wife's suit against her husband] based upon the substantive law of North Carolina, the place where the accident occurred."

Certainly the public policy of Maryland as to recovery for consortium is no stronger than its public policy forbidding a wife to sue her husband.

Other Courts which have considered the granting or denying, under the law of the place of the wrong, of recovery for deprivation of consortium contrary to the law of the forum, have not felt that there was involved a public policy sufficient to require the application of law other than the law of the place of the wrong. See *McVickers v. Chesapeake & Ohio Railway Company,* 194 F. Supp. 848 (E. D. Mich. 1961) ; *Casey v. Manson Construction and Engineering Co.,* 428 P. 2d 898 (Ore. 1967) ; *Sestito v. Knop,* 297 F. 2d 33 (7th Cir. 1961) ; *Jordan v. States Marine Corp.,* 257 F. 2d 232 (9th Cir. 1958) ; *Conway v. Ogier,* 184 N. E. 2d 681 (Ohio Ct. App., Franklin County, 1961).

We see here merely a difference of law between the place of the wrong and the forum and not an overriding public policy of the forum. The Virginia law will be applied to defeat the husband's right to recover for loss of consortium.

*Order reversed, with costs.*