## NAOMI LINTON v. CHARLES LINTON

[No. 57, September Term, 1980.]

*Decided October 14, 1980.*

The cause was argued before GILBERT, C. J., and MORTON and MOORE, JJ.

*Lawrence M. Stahl,* with whom was *Morton Edelstein* on the brief, for appellant.

*James K. Carmody,* with whom were *Serio, Carmody, Nichols & Childs* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This appeal asks that we review the aged, if not antiquated, doctrine of interspousal immunity in motor vehicle negligence cases. Why, it inquires, is an action grounded in negligence so disruptive to a marriage as to preclude as a matter of public policy the bringing of the case, while a suit involving property or contract is not deemed to shake the foundations of the marital relationship. Another question posed is whether the fact that a claim cannot be asserted is a festering sore of such a nature as to cause a bursting of the marriage bonds.

Interspousal immunity has stood for years, like the Rock of Gibraltar, guarding, as it were, the sea of matrimony from an invasion by causes apt to alienate the spouses. Some of our sister States have, figuratively speaking, pounded the Rock into sand,[1] thereby allowing it to wash away. Those jurisdictions hold that the immunity of a spouse, in negligence, is as disruptive to the marriage, if not more so, than the absence of immunity.[2]

The day may come when Maryland recognizes that the distinction between a suit by a spouse against a spouse in negligence differs not one iota, with respect to marital unity, than a suit in contract. This, however, is not that day. Under the circumstances of this case, we need not and do not reach the question of the continued viability of interspousal immunity with respect to Maryland. This is so because the law of the place of the tort, the *lex loci delecti,* the Commonwealth of Virginia, is a State that permits interspousal tort actions. *Surratt v. Thompson,* 212 Va. 191, 183 S.E.2d 200 (1971). The net result is that all we have to decide is whether Maryland will allow the Virginia law to be applied in Maryland courts, or whether that law is so violative of this State's public policy that the principle of comity need not be recognized because it is "hurtful or

---

**1.** *E.g.,* Lewis v. Lewis, 370 Mass. 619, 351 N.E.2d 526 (1976); Merenoff v. Merenoff, 76 N.J. 535, 388 A.2d 951 (1978); Surratt v. Thompson, 212 Va. 191, 183 S.E.2d 200 (1971); Richard v. Richard, 131 Vt. 98, 300 A.2d 637 (1973); Coffindaffer v. Coffindaffer, 244 S.W.2d 338 (W. Va. 1978).

**2.** One cannot help but wonder in the light of present day circumstances whether the doctrine continues to exist to protect the marriage or to protect an insurance carrier from possible collusion.

detrimental to the interest and welfare of . . . [Maryland's] citizens." *Lowndes v. Cooch,* 87 Md. 478, 487, 39 A. 1045, 1046 (1898).

Before further discussion of the law, we shall set forth the underlying facts leading to this matter's being in this Court.

In the late morning of October 15, 1978, Charles Linton (Linton) was operating a motor vehicle in Alexandria, Virginia. Linton was accompanied by a passenger, his wife, Naomi Linton, the appellant (appellant). Linton failed to obey a traffic signal which directed him to stop. Instead, he drove his automobile "at a high and unusual rate of speed" into an intersection. There, the Linton vehicle collided with another vehicle. All the parties lived in Maryland. Appellant was, according to her declaration, "injured, . . . about the head, body and limbs," incurred "great medical expenses," and was unable to follow her usual pursuits. She demanded recompense in the amount of $100,000. Notice of intent to rely upon Virginia law was filed concomitantly.

The appellant's suit was met with a demand for particulars, followed by a motion raising preliminary objection, Md. Rules 323 a 1 and 6.[3] The motion, however, was addressed to the doctrine of spousal immunity and reasons why the "judicial fiat" abrogating that doctrine in Virginia should not be imported into Maryland. Not one word of the substance of the motion concerned Md. Rule 323 a 1 and 6. No issue of that fact was made by appellant nor the hearing judge, and, consequently, we shall attach no significance to it.

While the case was pending for hearing on the motion, Mr. Linton died. A suggestion of death was filed. The hearing judge, in the Circuit Court for Anne Arundel County, decided that:

"The case could be brought in Virginia but because of that fact, if in fact . . . Virginia feels as they do. But I think to apply this law in the State of

---

3. Md. Rules 323 a 1 and 6 are directed respectively to "Lack of jurisdiction over the person" and "Pendency of another action between the same parties for the same cause."

> Maryland would be ... a strong violation of the public policy, I think public policy in Maryland would be ... much against the abrogation of spousal immunity so that for that reason I will grant the Motion Raising Preliminary Objection."

Before we can determine whether the public policy of this State is violated by the use of Maryland courts to enforce a right denied here but granted in Virginia, the place of the tort, we should first set out what is meant by "public policy." The Court of Appeals, in *Maryland Trust Co. v. Mechanics Bank,* 102 Md. 608, 632, 63 A. 70, 79 (1906), quoted in part from *Goodyear v. Brown,* 155 Pa. St. 514, 518, 26 A. 665, 666 (1893), in which the Pennsylvania Court defined a violation of public policy as "[a]nything that tends clearly to injure the public health, the public morals, the public confidence in the purity of the administration of the law, or to undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel, is against public policy." Reduced, perhaps, to over simplistic terms, public policy is no more and no less than what is believed by the courts and the legislature to be in the best interest of the citizens of this State. Anything that tends to undermine or erode either the declared or the undeclared best interest of the general health or moral welfare is said to be against public policy.

The public policy of our fathers may not have been the same as their predecessors, nor is the public policy of our fathers necessarily that of ours. Societal changes are constantly taking place and the views of today's generation usually keep pace. Public policy is not a stagnant pool but rather a river, with all of its characteristics, including flood stages and draught levels.

At issue, then, under today's public policy, is whether Maryland courts would permit an action by one spouse against the other, based on a motor tort involving Maryland residents, but occurring in another State that allows such action, or hold that public welfare, morals, or health bars that action.

Maryland has steadfastly adhered to the common law doctrine of interspousal immunity in tort cases. *See, e.g., Stokes v. Association of Independent Taxi Operators, Inc.,* 248 Md. 690, 237 A.2d 762 (1968); *Hudson v. Hudson,* 226 Md. 521, 174 A.2d 339 (1961); *Ennis v. Donovan,* 222 Md. 536, 161 A.2d 698 (1960); *Riegger v. Bruton Brewing Co.,* 178 Md. 518, 16 A.2d 99 (1940); *David v. David,* 161 Md. 532, 157 A. 755 (1932); *Furstenberg v. Furstenberg,* 152 Md. 247, 136 A. 534 (1927). *See also* Case Note, *Torts — Interspousal Immunity — Maryland Abrogates Interspousal Immunity in Cases of Outrageous Intentional Torts,* 8 U.B.L. Rev. 584 (1979).[4] Nevertheless, the Court, in *Lusby v. Lusby,* 283 Md. 334, 390 A.2d 77 (1978), recognized an exception to the doctrine whenever the tort committed against the spousal victim is not only intentional, as in assault and battery, but "outrageous," as where the errant spouse's conduct transcends common decency and accepted practices. The Court, in *Lusby,* was cognizant of the fact that there was no marital harmony that could be preserved by denying to the wife in that case the right to pursue civil remedies for the wrong done to her because the husband had effectively destroyed the marriage through his own atrocious misbehavior. Lusby represents a safe passage past the Rock. It is a limited way to be sure, but it is a small gap that heretofore did not exist.[5]

A question strikingly similar to that posed to us by the litigants was answered in 1963 by then Chief Judge Roszel C. Thomsen [6] of the United States District Court for the District of Maryland in *LaChance v. Service Trucking Co.,* 215 F. Supp. 162 (1963). In that case Mrs. LaChance, a passenger in a vehicle driven by her husband, was injured in a motor vehicle accident in North Carolina, as a result of a

---

4. The Court of Appeals has said that "if it be desirable to permit a married woman, under certain circumstances, to sue her husband in tort, this authorization should emanate from the Legislature, not from the courts." Ennis v. Donovan, 222 Md. 536, 543, 161 A.2d 698, 702 (1960).

5. Judge Smith, in *Lusby,* has traced the Common Law evolution of the interspousal immunity to the present time. Those who desire to acquaint themselves with that history should read *Lusby* as well as the case note thereon, in 8 U.B.L. Rev. 584 (1979).

6. Judge Thomsen is now a Senior District Judge.

collision between her husband's car and a truck of Service. North Carolina allows a wife to sue her husband in tort.[7] The wife sued Service in the District of Maryland, and Service joined the husband as a third-party defendant. The husband sought to dismiss the third-party claim on the basis of the Maryland interspousal immunity doctrine. The husband asserted that under the law of this State a wife could not maintain a tort action against her husband, therefore, the husband may not be joined as a third-party defendant because that would amount to a violation of Maryland's interspousal immunity doctrine.

After observing that both Maine, the LaChance domicile, and Maryland, the situs of the suit, proscribe suits in tort by spouses against each other, and citing the Maryland decisions, Judge Thomsen concluded that "the Court of Appeals of Maryland [8] would hold that under the circumstances of this case there is no strong policy of the State of Maryland which would prevent the maintenance of the third-party claim for contribution based upon the substantive law of North Carolina, the place where the accident occurred." *LaChance v. Service Trucking Co., supra* at 166.

The Maryland stand against actions brought in tort or negligence by one spouse against the other does not, *per se,* mean that this State will refuse to recognize the action if it is validly based on the law of a sister State that does not follow the spousal immunity theory. Judge Hammond (later Chief Judge), for the Court of Appeals in *Texaco v. Vanden Bosche,* 242 Md. 334, 219 A.2d 80 (1966), made it crystal clear that a "heavy burden" is shouldered by one who seeks to block a cause of action in Maryland courts on the premise that the case is contrary to this State's public policy.

Two years later, then Chief Judge Hammond wrote the opinion for the Court in *Harford Mutual Insurance Co. v.*

---

**7.** *See* Crowell v. Crowell, 180 N.C. 516, 105 S.E. 206 (1920), *rehearing denied,* 181 N.C. 66, 106 S.E. 149 (1921).

**8.** Original appellate jurisdiction over negligence action had not been shifted to this Court at that time. In fact, this Court was not then in existence.

*Bruchey,* 248 Md. 669, 238 A.2d 115 (1968). That case involved a personal injury growing out of a motor vehicle accident that occurred in Virginia. Mrs. Bruchey was injured in the collision. Virginia does not allow recovery for loss of consortium. The husband brought suit in the Maryland courts seeking to recover for the loss of consortium. In invoking the law of Virginia so as to prevent the recovery, Chief Judge Hammond quoted from *Texaco v. Vanden Bosche, supra:*

> " 'Recent legal thinking is that a public policy which will permit a state to refuse to enforce rights created by the law of a sister state must be very strong indeed. See Paulsen and Sovern, *'Public Policy' in the Conflict of Laws,* 56 Colum. L. Rev. 969, 1212-16 (1956); Katzenbach, *Conflicts on an Unruly Horse: Reciprocal Claims and Tolerances in Interstate and International Law,* 65 Yale L.J. 1087 (1956); Reese, *Full Faith and Credit to Statutes: The Defense of Public Policy,* 19 U. Chi. L. Rev. 339 (1952); Sumner, *The Status of Public Acts in Sister States,* 3 U.C.L.A.L. Rev. 1, 25 (1955); Carnahan, *What is Happening in Conflicts of Laws: Three Supreme Court Cases,* 6 Vand. L. Rev. 607; Restatement, *Conflict of Laws* § 612 (1934); *Broderick v. Rosner,* 294 U.S. 629, 79 L. Ed. 1100.' " *Harford Mutual Insurance Co. v. Bruchey, supra* at 674-75, 238 A.2d at 118.

Judge Hammond went on to observe the holding of Judge Thomsen in *LaChance* and quoted therefrom with approval, saying:

> " 'In the light of all the Maryland decisions, I conclude that the Court of Appeals of Maryland would hold that under the circumstances of this case there is no strong policy of the State of Maryland which would prevent the maintenance of [the wife's suit against her husband] based upon the substantive law of North Carolina, the place where the accident occurred.' " *Id.* at 676, 238 A.2d at 118.

Judge Hammond then commented, "Certainly the public policy of Maryland as to recovery for consortium is no stronger than its public policy forbidding a wife to sue her husband." *Id.*

We read *Harford Mutual Insurance Co. v. Bruchey, supra,* as approving the determination by Judge Thomsen that Maryland public policy is not so strong as to prohibit a spouse from recovering against the other spouse in the courts of this State if the action is permitted by the *lex loci delecti.* Our public welfare, health, and morals will not be endangered by allowing such suits to proceed to judgment.[9] There is little likelihood of an onslaught of similar litigation in our courts.

What we perceive in this case is "merely a difference of law between the place of the wrong [Virginia] and the forum [Maryland] and not an overriding public policy of the forum." *Id.* at 676, 238 A.2d at 119.

The law of the forum will not be applied to defeat the appellant's right to sue her husband for negligence when, as here, the *lex loci delecti* permits that type of civil action.

> *Order granting preliminary objection and dismissing the appellant's declaration reversed.*
> *Case remanded for further proceedings.*
> *Costs to be paid by appellee.*

---

9. In the instant case, it can hardly be argued that the suit will cause a strain on the marital relationship when, in fact, the death of the husband has severed the bonds of matrimony.