31 A.3d 123

Katherine M. LEWIS

v.

Jeremy P. WALETZKY.

Misc. No. 3, Sept. Term, 2010.

Court of Appeals of Maryland.

Oct. 27, 2011.

Paul McCourt Curley (Canfield, Baer LLP of Richmond, VA), on brief, for Appellant.

Erica C. Mudd (Kenneth Armstrong of Armstrong, Donohue, Ceppos, Vaughan & Rhoades, Chartered, Rockville, MD), on brief, for Appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE,* MURPHY, ADKINS and BARBERA, JJ.

BARBERA, J.

We have before us a question of law certified by the United States Court of Appeals for the Fourth Circuit pursuant to the Maryland Uniform Certification of Questions of Law Act, Maryland Code (1974, 2006 Repl.Vol.), § § 12–601 to 12–613 of the Courts and Judicial Proceedings Article ("CJ"). The question arises from a medical malpractice suit that Katherine Lewis filed in the United States District Court for the District of Maryland ("District Court") against her former psychiatrist, Dr. Jeremy P. Waletzky, for injuries she allegedly sustained as a result of medications he prescribed to her.

Medical malpractice cases in Maryland are governed by the Health Care Malpractice Claims statute (herein "the Act"), CJ §§ 3–2A–01 through 3–2A–10.[1] As will be explained in more detail *infra,* Lewis did not comply with various administrative filing requirements set forth in the Act before filing her complaint in the District Court. Under Maryland law, those administrative filing requirements are a condition precedent to initiating suit in Maryland state courts and federal courts located in Maryland. *Carroll v. Konits,* 400 Md. 167, 181, 929 A.2d 19, 28 (2007). Failure to meet these requirements, when applicable, results in dismissal of the suit

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. For purposes of this opinion we assume that Lewis's claim meets the threshold requirements of the Act, which applies only to claims against Maryland health care providers for medical injuries for which the damages sought exceed "the limit of the concurrent jurisdiction of the District Court." CJ § 3–2A–02(a).

without prejudice. *Kearney v. Berger,* 416 Md. 628, 668–69, 7 A.3d 593, 616–17 (2010).

Before the District Court, Waletzky filed a motion to dismiss the complaint, arguing that Lewis was required to have complied with the Act's filing requirements. Lewis responded that she was not subject to the Act because the injury occurred in Washington, D.C. (hereinafter "D.C.") and therefore D.C. law governed her malpractice suit. Resolution of that matter implicates choice-of-law principles, to which the District Court, sitting in diversity jurisdiction, was required to apply Maryland's choice-of-law principles. *See, e.g., Day & Zimmermann, Inc. v. Challoner,* 423 U.S. 3, 4, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (per curiam) (holding that federal courts sitting in diversity jurisdiction must apply the choice-of-law rules of the state in which the court is located).

 Following argument and briefing, the District Court filed a written opinion granting Waletzky's motion to dismiss. The District Court considered the filing requirements of the Act to be substantive tort law; the court therefore focused on Maryland's application of *lex loci delicti.* That rule directs a court to "apply the [substantive tort] law of the place where the tort or wrong was committed." *See Lab. Corp. of Am. v. Hood,* 395 Md. 608, 613, 911 A.2d 841, 844 (2006). Because the injury occurred in D.C.,[2] the District Court reasoned that, pursuant to *lex loci delicti,* D.C. law, which at that time had no specific procedural requirements for medical malpractice claims, would govern the present litigation. The District Court determined, however, that the Act's filing requirements implicated strong public policy sufficient to require Lewis's compliance with those requirements, thereby invoking the

---

2. Pursuant to the Maryland Certified Uniform Questions Act, we accept the statement of facts provided by the certifying court. *See, e.g., AGV Sports Grp., Inc. v. Protus IP Solutions, Inc.,* 417 Md. 386, 389 n. 1, 10 A.3d 745, 746 n. 1 (2010). "[W]e consider only questions of state law," *Mercantile–Safe Deposit & Trust Co. v. Purifoy,* 280 Md. 46, 54, 371 A.2d 650, 655 (1977), and may go no further than the question certified, *Public Serv. Comm'n v. Highfield Water Co.,* 293 Md. 1, 10, 441 A.2d 1031, 1035 (1982). Accordingly, for the purposes of this case, we must assume that the injury occurred in D.C.

public policy exception to *lex loci delicti*. The District Court therefore dismissed the suit without prejudice, pursuant to *Kearney*. *See Kearney*, 416 Md. at 668–69, 7 A.3d at 616–17 (explaining that failure to comply with the requirements of the Act requires dismissal without prejudice).

On appeal, the United States Court of Appeals for the Fourth Circuit (hereinafter "Court of Appeals") determined that the choice-of-law issue involves a question of unresolved Maryland law and, thus, should be decided by this Court. The Court of Appeals certified the following question to this Court:

> Does Maryland recognize the public policy exception, or any other exception, to *lex loci delicti* based on the Maryland Health Care Malpractice Claims Act ... which requires a plaintiff to comply with certain mandatory administrative filings prior to filing a medical malpractice lawsuit in a Maryland court?

## I.

As we have mentioned, this litigation involves a claim of alleged medical malpractice. The Court of Appeals has provided us with the underlying facts of the federal suit:

> Lewis alleges the following facts in her complaint which, for purposes of this appeal, are not disputed. . . .
>
> Lewis, once a resident of [Washington, D.C.] and currently a resident of Minnesota was formerly a patient of Waletzky. Waletzky, at all times relevant, was a physician licensed to practice in the State of Maryland and had his office in Chevy Chase or Bethesda, Maryland. From approximately October 2000 until January 2005, Waletzky was Lewis' psychiatrist and treated her at his Chevy Chase office. Waletzky prescribed several psychotropic medications to Lewis, including antidepressants and stimulants, and also prescribed antipsychotic and/or neuroleptic drugs. All of the prescribed medications were filled in pharmacies in [Washington, DC] and ingested by Lewis while she was in [Washington, DC].
>
> During the treatment period, Waletzky did not diagnose Lewis with any serious mental disorder and never made any

diagnosis of Lewis' psychiatric condition. After taking the prescribed antipsychotics, Lewis began experiencing adverse side effects and discontinued her use of these medications. Immediately after experiencing these adverse side effects, Lewis suffered, for the first time in her life, an anxiety attack. She contacted Waletzky who instructed her to continue taking the antipsychotic medications and wrote her additional prescriptions in order for her to "taper off" the antipsychotic medications. While she was "tapering off" the antipsychotic medications, Lewis continued to experience adverse side effects, including extreme jaw tension and clenching, anxiety, and other effects. After completely withdrawing from the antipsychotic drugs, Lewis' side effects persisted and worsened, and she was eventually diagnosed with a permanent neurological disorder known as Tardive Dyskinesia/Dystonia caused by the antipsychotics she had taken.

(internal citations omitted).

## II.

Given the question before us, we need not discuss at length all the various provisions of the Act [3]; instead we focus on the provisions of the Act pertinent to the question we must answer. In effect since 1976, the Act created the Health Care Alternative Dispute Resolution Office ("HCADRO") for the purpose of establishing and administering an arbitration process for medical malpractice claims prior to court action.

The Act includes various procedural provisions that a plaintiff pursuing a medical malpractice action must satisfy before being able to prosecute his or her claim in a court of Maryland. *See* CJ § 3–2A–02 ("Exclusiveness of procedures").[4] In

---

**3.** For a summary of the Act and its history, see Judge Harrell's opinion for this Court in *Breslin v. Powell*, 421 Md. 266, 277–87, 26 A.3d 878, 885–91 (2011).

**4.** Subsection (a)(2) of that section provides in relevant part: "An action or suit [to which the Act applies] may not be brought or pursued in any court of this State except in accordance with [the Act]."

the years following its enactment, the Act has been modified so that today, and at the time of the present case, arbitration may be waived unilaterally by either the plaintiff or the health care provider by filing a written election with the Director of HCADRO indicating the party's desire to do so. *See* CJ § 3–2A–06B.[5]

---

5. Section 3–2A–06B, entitled "Waiver of arbitration after filing certificate of qualified expert," provides in relevant part as follows:

(a) *In general.*—Arbitration of a claim with the Health Care Alternative Dispute Resolution Office may be waived by the claimant or any defendant in accordance with this section, and the provisions of this section shall govern all further proceedings on any claim for which arbitration has been waived under this section.

(b) *Waiver by claimant.*—(1) Subject to the time limitation under subsection (d) of this section, any claimant may waive arbitration at any time after filing the certificate of qualified expert required by § 3–2A–04(b) of this subtitle by filing with the Director a written election to waive arbitration signed by the claimant or the claimant's attorney of record in the arbitration proceeding.

(2) The claimant shall serve the written election on all other parties to the claim in accordance with the Maryland Rules.

(3) If the claimant waives arbitration under this subsection, all defendants shall comply with the requirements of § 3–2A–04(b) of this subtitle by filing their certificates at the Health Care Alternative Dispute Resolution Office or, after the election, in the appropriate circuit court or United States District Court.

(c) *Waiver by defendant.*—(1) Subject to the time limitation under subsection (d) of this section, any defendant may waive arbitration at any time after the claimant has filed the certificate of qualified expert required by § 3–2A–04(b) of this subtitle by filing with the Director a written election to waive arbitration signed by the defendant or the defendant's attorney of record in the arbitration proceeding.

(2) The defendant shall serve the written election on all other parties to the claim in accordance with the Maryland Rules.

(3) If a defendant waives arbitration under this subsection, the defendant shall comply with the requirements of § 3–2A–04(b) of this subtitle by filing the certificate at the Health Care Alternative Dispute Resolution Office, or, after the election, in the appropriate circuit court or United States District Court.

(d) *Time for filing.*—(1) A waiver of arbitration by any party under this section may be filed not later than 60 days after all defendants have filed a certificate of qualified expert under § 3–2A–04(b) of this subtitle.

(2) Any waiver of arbitration after the date specified in paragraph (1) of this subsection shall be in accordance with the provisions of § 3–2A–06A of this subtitle.

(e) *Effect of election.*—After filing, the written election shall be binding upon all parties.

Whether or not a plaintiff elects to forego the arbitration process, CJ § 3–2A–04(a)(1)(i) requires the plaintiff, as a condition precedent to proceeding, to file with the Director of the HCADRO his or her medical malpractice claim. CJ § 3–2A–04(a) [6]; *see also Kearney,* 416 Md. at 656–57, 7 A.3d at

---

(f) *Filing of complaint; service; dismissal*—(1) Within 60 days after the filing of an election to waive arbitration by any party, the plaintiff shall file a complaint and a copy of the election to waive arbitration in the appropriate circuit court or the United States District Court.
 (2) After filing the complaint, the plaintiff shall serve a summons and a copy of the complaint upon all defendants or the attorney of record for all parties in the health claims arbitration proceeding.
 (3) Failure to file a complaint within 60 days of filing the election to waive arbitration may constitute grounds for dismissal of the complaint upon:
 (i) A motion by an adverse party; and
 (ii) A finding of prejudice to the adverse party due to the delay in the filing of the complaint.
(g) *Joinder of additional health care providers.*—After the filing of an election to waive arbitration under this section, if a party joins an additional health care provider as a defendant in an action, the party shall file a certificate of qualified expert required by § 3–2A–04(b) of this subtitle with respect to the additional health care provider.
(h) *Procedure.*—In any case subject to this section, the procedures of § 3–2A–06(f) of this subtitle shall apply.

6. Section 3–2A–04(a) provides as follows:
 (a) *Filing of claim and response.*—(1)(i) A person having a claim against a health care provider for damage due to a medical injury shall file the claim with the Director and, if the claim is against a physician, the Director shall forward copies of the claim to the State Board of Physicians.
 (ii) The Director shall cause a copy of the claim to be served upon the health care provider by the appropriate sheriff in accordance with the Maryland Rules.
 (iii) The health care provider shall file a response with the Director and serve a copy on the claimant and all other health care providers named therein within the time provided in the Maryland Rules for filing a responsive pleading to a complaint.
 (iv) The claim and the response may include a statement that the matter in controversy falls within one or more particular recognized specialties.
 (2) A third-party claim shall be filed within 30 days of the response of the third-party claimant to the original claim unless the parties consent to a later filing or a later filing is allowed by the panel chairman or the court, as the case may be, for good cause shown.
 (3) A claimant may not add a new defendant after the arbitration panel has been selected, or 10 days after the prehearing conference has been held, whichever is later.

609–10. Within 90 days of filing that claim, the plaintiff must also file with the Director of HCADRO a certificate of a qualified expert. CJ § 3–2A–04(b).[7] That certificate must contain the qualified expert's attestations to a "departure from [the] standards of care, and that the departure ... is the proximate cause of the alleged injury." CJ § 3–2A–04(b)(1)(i)(1).

"[W]e have repeatedly held that adherence to the [Act's] procedures is necessary to maintain a claim that is subject to the [Act]." *Kearney,* 416 Md. at 655, 7 A.3d at 608. In that regard, we have not hesitated to dismiss a claim because the plaintiff failed to comply with the Act's administrative filing requirements. *See id.* at 657–58, 660–61, 7 A.3d at 610–11 (stating that "[t]he requirement that the claimant or plaintiff file a certificate of qualified expert serves an important purpose, even in cases of unilateral waiver[,]" and dismissing the claim for failure to comply); *Carroll,* 400 Md. at 181, 929 A.2d at 28 ("[I]f a proper [c]ertificate has not been filed, the condition precedent to maintain the action has not been met and dismissal is required by the Statute once the allotted time

---

(4) Until all costs attributable to the first filing have been satisfied, a claimant may not file a second claim on the same or substantially the same grounds against any of the same parties.

**7.** Section 3–2A–04(b) provides in relevant part:

(b) *Filing and service of certificate of qualified expert.*—Unless the sole issue in the claim is lack of informed consent:

(1)(i) 1. Except as provided in item (ii) of this paragraph, a claim or action filed after July 1, 1986, shall be dismissed, without prejudice, if the claimant or plaintiff fails to file a certificate of a qualified expert with the Director attesting to departure from standards of care, and that the departure from standards of care is the proximate cause of the alleged injury, within 90 days from the date of the complaint; and

2. The claimant or plaintiff shall serve a copy of the certificate on all other parties to the claim or action or their attorneys of record in accordance with the Maryland Rules; and

(ii) In lieu of dismissing the claim or action, the panel chairman or the court shall grant an extension of no more than 90 days for filing the certificate required by this paragraph, if:

1. The limitations period applicable to the claim or action has expired; and

2. The failure to file the certificate was neither willful nor the result of gross negligence.

period [for filing the certificate] has elapsed."); *see also Tranen v. Aziz,* 304 Md. 605, 612, 500 A.2d 636, 639 (1985) (explaining that the "statutory context of [the Act's] directives plainly shows that compliance with them is mandatory and that noncompliance mandates dismissal").

The District Court, applying the law of Maryland, dismissed Lewis's claim for failure to comply with the filing requirements of the Act, precipitating her appeal to the Court of Appeals and, in turn, that court's question to us.

## III.

### A.

A federal court, in a diversity action, must apply the substantive law of the state in which it sits, including that state's choice-of-law principles. *See, e.g., Hood,* 395 Md. at 611, 911 A.2d at 842–43. For that reason, the Court of Appeals wants to know whether, if Lewis's suit was filed in a Maryland state court, the filing requirements of the Act would apply. To answer that question, we must look, first, to Maryland law concerning choice of law. In that regard, this Court adheres to the doctrine of *lex loci delicti. See Hood,* 395 Md. at 615, 911 A.2d at 845. Under that approach, when a Maryland state court is confronted with multistate tort litigation, that court must apply the law of the place of injury as to all matters of substantive law. *Id.,* 911 A.2d at 845; *see also White v. King,* 244 Md. 348, 352, 223 A.2d 763, 765 (1966) ("This Court has consistently followed the rule that when an accident occurs in another state[,] substantive rights of the parties, even though they are domiciled in Maryland, are to be determined by the law of the state in which the alleged tort took place.").[8] Procedural matters, however, are always gov-

---

8. When determining which law controls the enforceability and construction of a contract, we apply *lex loci contractus. See Kramer v. Bally's Park Place, Inc.,* 311 Md. 387, 390, 535 A.2d 466, 467 (1988). In choice-of-law issues involving workers' compensation statutes, we apply a balance of interests analysis. *See Powell v. Erb,* 349 Md. 791, 792–93, 709 A.2d 1294, 1295 (1998) (stating that "the Court made clear

erned by the law of the forum. *Erie Ins. Exch. v. Heffernan,* 399 Md. 598, 632–33, 925 A.2d 636, 656 (2007) (stating that "substantive law [is] to be determined by the place of wrong, and the procedural law [is] to be determined by the law of the forum"); *Hood,* 395 Md. at 615, 911 A.2d at 845 (stating same).

The Court of Appeals, in crafting the certified question as it does, recognizes Maryland's adherence to *lex loci delicti.* What the certified question does not ask, at least not in so many words, is whether Maryland would apply *lex loci delicti* in the present case. In their briefs and at oral argument before this Court, the parties focused their attention on whether the public policy exception to *lex loci delicti* should be invoked. By so arguing, the parties necessarily assumed that the filing requirement is part of Maryland's substantive law.

We, however, do not make the same assumption. Our choice-of-law rules mandate a threshold determination of whether the Act's filing requirement is substantive law or a procedural matter. *Heffernan,* 399 Md. at 615, 925 A.2d at 646. If substantive, *lex loci delicti* controls and, absent invocation of the public policy exception, a Maryland court would not enforce the Act's filing requirements. If, however, the filing requirements are procedural, a Maryland court would require compliance.[9]

---

[in *Hauch v. Connor,* 295 Md. 120, 453 A.2d 1207 (1983)] that the relevant choice of law principles were those of workers' compensation law, rather than tort law, and that the choice of law decision turned on the determination of which jurisdiction had the greater interest").

**9.** Federal courts long ago resolved the question whether, for purposes of *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the Act is substantive rather than procedural. *See Rowland v. Patterson,* 882 F.2d 97, 99 (4th Cir.1989). That determination, though, is separate from the procedural-substantive distinction in the choice-of-law context. *See Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *see also Sun Oil Co. v. Wortman,* 486 U.S. 717, 726, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988) (rejecting the notion that "there is an equivalence between what is substantive under the *Erie* doctrine and what is substantive for purposes of conflict of laws").

### B.

To resolve the substantive-procedural dichotomy for choice-of-law purposes, we look first to our cases in which we have applied the doctrine of *lex loci delicti.* Our research has not uncovered a single case in which the doctrine has been applied to a provision of law similar to that at issue in the case before us. The cases we discuss below, however, reveal that the Act's filing requirements are distinguishable from the various provisions of law that we have treated as involving matters of substantive tort law.

We have applied *lex loci delicti* on prior occasions to enforce the substantive law of the place of injury. We have done so, for example, to enforce the Guest Statutes of other jurisdictions. In *White,* the plaintiff brought a tort claim in Maryland to recover for injuries resulting from a car accident that occurred in Michigan. 244 Md. at 351, 223 A.2d at 765. Michigan's Guest Statute at the time limited an automobile passenger's ability to recover damages from the driver for injuries to situations involving intentional misconduct or gross negligence. *Id.,* 223 A.2d at 765. We applied *lex loci delicti* and held that Michigan's Guest Statute applied, and, therefore, the question of whether the accident was caused by gross negligence should have been submitted to the jury. *Id.* at 362, 223 A.2d at 771.

We also have applied the doctrine to cases involving claims for loss of consortium. In *Harford Mut. Ins. Co. v. Bruchey,* 248 Md. 669, 238 A.2d 115 (1968), Mr. and Mrs. Bruchey, both residents of Maryland, were injured in a car accident while traveling together in Virginia. *Id.* at 670, 238 A.2d at 115. In subsequent litigation brought in the Circuit Court for Harford County, Mr. Bruchey sought to recover for loss of consortium as a result of his wife's injuries. *Id.* at 670–71, 238 A.2d at 115–16. Virginia law at that time prohibited a husband from recovering for loss of consortium. *Id.,* 238 A.2d at 115–16. Following *lex loci delicti,* we held that Virginia's law "defeat[ed] [Mr. Bruchey's] right to recover for loss of consor-

tium[,]" even though under Maryland law such an action would have been permitted. *Id.* at 676, 238 A.2d at 119.

Other scenarios in which Maryland Courts have applied *lex loci delicti* analysis include: (1) whether a Maryland court would enforce a foreign jurisdiction's ban on wrongful birth actions, *see Hood*, 395 Md. 608, 622–24, 911 A.2d at 849–51 (reaffirming this State's commitment to *lex loci delicti* and opining that Maryland would invoke the public policy exception to allow a wrongful birth action to proceed in Maryland courts should the law of the state of injury bar such an action); (2) cases involving the elements required to be established in a negligence action, *see, e.g., Chambco v. Urban Masonry Corp.*, 338 Md. 417 421–22, 659 A.2d 297, 299 (1995) (reversing and remanding judgment in part because trial court erred in applying Maryland law, when *lex loci delicti* directed application of D.C. law to determine elements of negligence claim); and (3) cases involving whether to apply Maryland's then-existing doctrine of interspousal immunity to a suit for which *lex loci delicti* directed application of foreign law, *see, e.g., Linton v. Linton*, 46 Md.App. 660, 667, 420 A.2d 1249, 1253 (1980) (allowing an interspousal suit sounding in negligence to proceed because it was permitted by the law of Virginia, the place of injury).

We most recently affirmed our commitment to *lex loci delicti* in *Heffernan*, 399 Md. at 620, 925 A.2d at 649. In that case, Mr. and Mrs. Heffernan purchased two uninsured/underinsured motorist policies from Erie Insurance Exchange. *Id.* at 606, 925 A.2d at 640–41. Pursuant to those policies, Erie guaranteed to pay to the Heffernans all damages "that the law entitles you" to recover from an uninsured or underinsured motorist.[10] *Id.* at 609, 925 A.2d at 641. The Heffernans' daughter was killed in an automobile accident in Delaware, *id.* at 605, 925 A.2d at 640, while traveling as a passenger in an

---

**10.** That language mirrored language employed in Maryland Code (1997, 2006 Repl.Vol.), § 19–509(c) of the Insurance Article, which establishes the mandatory baseline coverage for uninsured motorist provisions. *Heffernan*, 399 Md. at 610, 925 A.2d at 643.

underinsured motor vehicle, *id.* at 605–06, 925 A.2d at 640–41. During litigation that followed in the United States District Court for the District of Maryland, the court certified to us the following questions of law:

1. In a case involving a claim for benefits pursuant to the uninsured/underinsured provisions of an automobile insurance contract executed in Maryland, where the car accident occurred in Delaware, should Maryland or Delaware law be applied to determine what the claimants would be "entitled to recover" because of the accident?

2. If Delaware law governs the tort issues of this case under *lex loci delicti,* would Maryland's public policy exception to that doctrine nonetheless require application of:

 a. Maryland's statutory cap on non-economic damages, . . . where the insured and the insurer both reside in Maryland, the covered automobiles are garaged in Maryland, and the contract was executed and administered in Maryland?

 b. Maryland's contributory negligence principles?

*Id.* at 604, 925 A.2d at 639.

With regard to the first question, we determined that the contractual language, "that the law entitles you," did not raise a question of contractual interpretation, but, instead, of tort liability and damages. *Id.* at 619–20, 925 A.2d at 648. As such, the question was one involving substantive tort law, for which *lex loci delicti* applied. *Id.,* 925 A.2d at 648.

We answered both parts of the second question in the negative, holding that the statutory cap on non-economic damages and the principle of contributory negligence were matters of substantive tort law and the respective public policy undergirding each was insufficient to override *lex loci delicti.* *Id.* at 635–36, 925 A.2d at 658. With respect to the statutory cap on non-economic damages, we rejected the notion raised by Erie that the provision was part of Maryland's procedural law. *Id.* at 633, 925 A.2d at 656. In doing so, we agreed with the Court of Special Appeals' determination in *Black v. Leatherwood Motor Coach Corp.,* 92 Md.App. 27, 39,

606 A.2d 295, 300–01 (1992), that the statutory cap is part of the "substantive law of Maryland and ... therefore, inapplicable to this case, which is governed by the substantive law of Delaware." *Heffernan,* 399 Md. at 633, 925 A.2d at 656. We found support for our conclusion in § 412 of the Restatement (First) of Conflicts of Laws, which provides that "[t]he measure of damages for a tort is determined by the place of the wrong." *Id.* at 633, 925 A.2d at 656–57 (quoting *Restatement (First) of Conflict of Laws* § 412 (1934)). We also noted that, in *Steger v. Egyud,* 219 Md. 331, 149 A.2d 762 (1959), we relied on § 412 for the proposition that substantive tort law encompasses "the extent of liability and the right to, and measure of[,] contribution." *Heffernan,* 399 Md. at 633, 925 A.2d at 656–57 (quoting *Egyud,* 219 Md. at 337, 149 A.2d at 765) (internal quotation mark omitted). Accordingly, we held that Delaware law, which did not limit noneconomic damages and followed comparative negligence principles, would govern the *Heffernan* litigation. *Id.* at 635–36, 925 A.2d at 658.

## C.

With the exception of *Heffernan,* the cases we have discussed thus far involved provisions of law that were, without question, matters of substantive law, for which *lex loci delicti* applied. Consequently, we had no reason to scrutinize the substantive-procedural dichotomy. There is, however, one case from the intermediate appellate court that provides guidance on that distinction. That case is *Jacobs v. Adams,* 66 Md.App. 779, 505 A.2d 930 (1986).

In *Jacobs,* the intermediate appellate court had before it three tort cases filed in Maryland circuit courts involving automobile accidents that occurred in D.C. *Id.* at 783, 505 A.2d at 932. Each case presented the same choice-of-law issue: whether Maryland courts should enforce D.C.'s no-fault insurance statute, which barred all civil suits to recover for personal injury resulting from automobile accidents unless, *inter alia,* medical expenses exceeded $5,000, and, if applied to the plaintiffs' claims, would bar them. *Id.,* 505 A.2d at 932.

Maryland's no-fault insurance scheme had no such limitation. *Id.* at 787, 505 A.2d at 934.

To answer that question, the Court of Special Appeals had to decide, among other issues, whether the no-fault insurance provision at issue was substantive, to which *lex loci delicti* would control, or procedural, and thereby governed by Maryland law. *Id.* at 790, 505 A.2d at 936. The *Jacobs* Court had this to say in that regard:

> A logical resolution to this problem was suggested by Professors William Richman and William Reynolds, who said, "[f]orum interest and convenience ... should dictate the classification of an issue as 'procedural.' Put differently, if neither the forum's interest nor judicial convenience is involved, no reason exists to treat the problem as 'procedural.' " W. Richman & W. Reynolds, *Understanding Conflict of Laws* 116 (1984). We agree. *There is no reason to classify an issue as procedural, and hence controlled by the law of the forum, unless it affects the manner in which the forum administers justice.* If the law of the state wherein an accident occurred does not grant the affected parties the right to bring a suit, then there is no need for the application of any procedural laws. It is only after the rights of parties have been established by the laws of the situs that the forum may determine how those rights shall be exercised.

*Jacobs,* 66 Md.App. at 790–91, 505 A.2d at 936 (emphasis added) (internal footnote omitted). Persuaded by Professors Richman and Reynold's reasoning, the Court of Special Appeals held that D.C.'s no-fault insurance law was substantive. *Id.* at 791, 505 A.2d at 936. The court found it dispositive that the law "did not restrict, limit, define, qualify, or otherwise simply modify the cause of action [which would indicate that the provision was one of procedure,] but declared it to be wholly unavailable." *Id.,* 505 A.2d at 936.

### D.

From the cases we have discussed, we can reduce the provisions of law to which we have applied *lex loci delicti* (*i.e.,*

the provisions of law that we have deemed matters of substantive tort law) to three broad categories. First, we have applied *lex loci delicti* to provisions of law that recognize or bar a cause of action. Second, we have applied the doctrine to provisions of law which define the elements of a claim. And third, we have applied the doctrine to provisions of law that limit or prescribe the way in which damages are calculated. In each situation, the provision of law is linked inextricably to the nature and existence of the underlying right.

Though our review of Maryland's choice-of-law rules indicates that this Court has not had the opportunity to provide a lengthy commentary on the matter of procedure for choice-of-law purposes, we have explained that Maryland law controls "the inferences to be drawn from the evidence, the sufficiency of the evidence, the inferences from it to go to the jury and other procedural matters." *Vernon v. Aubinoe,* 259 Md. 159, 162, 269 A.2d 620, 621 (1970). We have also held that statutes of limitations are procedural for choice-of-law purposes. *Doughty v. Prettyman,* 219 Md. 83, 88, 148 A.2d 438, 440 (1959). And, as our Court of Special Appeals has explained, procedural matters are those that merely "restrict, limit, define, qualify, or otherwise simply modify the cause of action," rather than provisions that declare the existence or abrogation of a cause of action, which are substantive. *Jacobs,* 66 Md.App. at 791, 505 A.2d at 936.

We believe that the Court of Special Appeals's analysis in *Jacobs* establishes the appropriate analytical framework in distinguishing substantive from procedural provisions of law. We agree that "[i]t is only after the rights of parties have been established by the laws of the situs that the forum may determine how those rights shall be exercised." *Jacobs,* 66 Md.App. at 791, 505 A.2d at 936. We are also mindful of the following observation by a leading commentator:

"Another type of rule often called procedural actually is designed to govern access to the courts, and necessarily governs access only to courts of the state having the rule. A state can control access to its own courts.... A state may

say, for example, that a plaintiff may not sue for damages on account of personal injuries unless he gives notice to the defendant of the injury within a specified time, and such a rule may preclude suits even on extrastate injuries if the specified notice be not given."

Robert A. Leflar, *American Conflicts Law* § 122, p. 243–44 (3d ed. 1977) (footnotes omitted). In sum, we shall describe procedural provisions of law as those that generally "restrict, limit, define, qualify, or otherwise simply modify" an existing cause of action. Put differently, procedural matters are those that simply affect the manner in which the forum administers justice.

### E.

■■■ With this legal framework in mind, we turn next to identify on which side of the procedural-substantive divide the Act's filing requirements reside. It is plain from the outset that the filing requirements do not fit neatly among any of the three "categories" to which we have applied *lex loci delicti.* We have described § 3-2A-04(b)(1)'s certificate of qualified expert as "an indispensable part of [the process to reduce the number of medical malpractice court suits] because it helps weed out non-meritorious claims." *Kearney,* 416 Md. at 658, 7 A.3d at 610. "The certificate [furthers this process] not only by helping the litigants, the HCADRO, and the trial court determine whether a claimant or plaintiff's claim has merit, but also by requiring the claimant or plaintiff to support the claim with an expert's opinion." *Id.,* 7 A.3d at 610. Compliance with the Act's filing requirements is a condition precedent to maintenance of suit. *See supra* pp. 656–57, 31 A.3d at 128–29. Though of obvious importance to the Act, these filing provisions in no way establish, deny, or define a cause of action. These provisions do not define the standard of care to be applied; nor do they prescribe how liability is to be determined. Instead, the provisions are part of a legislative scheme intended to control the manner in which Maryland administers justice, by controlling access to Maryland courts.

 Any remaining doubt as to the nature of the filing provisions for choice-of-law purposes is resolved by the plain language of CJ § 3–2A–10,[11] by which the General Assembly has pronounced the filing requirements to be procedural. That provision, entitled "Construction of subtitle," provides as follows:

> Except as otherwise provided in §§ 3–2A–08A [enabling a defendant, subject to certain time constraints, to make "an offer of judgment" without risk that such offer be used against him or her should it be rejected] and 3–2A–09 [setting a cap on non-economic damages in all medical malpractice cases] of this subtitle, *the provisions of this subtitle shall be deemed procedural in nature and may not be construed to create, enlarge, or diminish any cause of action not heretofore existing,* except the defense of failure to comply with the procedures required under this subtitle.

CJ § 3–2A–10 (emphasis added). Defining the Act's filing requirements as procedural, for choice-of-law purposes, gives effect to the General Assembly's clear advisement that, with the exception of CJ §§ 3–2A–08A and 3–2A–09, "the provisions of this subtitle shall be deemed procedural in nature and may not be construed to create, enlarge, or diminish any cause of action not heretofore existing." CJ § 3–2A–10.

In sum, we hold that the filing provisions at issue in this case are procedural provisions of Maryland law. And, under

---

11. We note that "the cardinal rule of [statutory interpretation] is to ascertain and effectuate the intent of the Legislature." *Headen v. Motor Vehicle Admin.,* 418 Md. 559, 569, 16 A.3d 196, 202 (2011) (quoting *Rosemann v. Salsbury, Clements, Bekman, Marder & Adkins, LLC,* 412 Md. 308, 314, 987 A.2d 48, 52 (2010)) (internal quotation marks omitted). To determine legislative intent, we begin with the ordinary, plain meaning of the language of the statute. *Bd. of Educ. v. Zimmer-Rubert,* 409 Md. 200, 214, 973 A.2d 233, 241 (2009). "If [the] statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written." *Kushell v. Dep't Natural Res.,* 385 Md. 563, 577, 870 A.2d 186, 193 (2005). We must view each provision of a statute "within the context of the statutory scheme to which it belongs," and will avoid "forced or subtle" interpretations. *Lockshin v. Semsker,* 412 Md. 257, 275–76, 987 A.2d 18, 29 (2010).

Maryland law, Lewis would be required to comply with the filing requirements.

### IV.

In conclusion, the doctrine of *lex loci delicti* does not apply under the circumstances present here. For the reasons we have explained, we hold that the filing requirements at issue are procedural, mandating application of those requirements under Maryland choice-of-law principles, as the law of the forum. We would require Lewis to comply with the Act's filing requirements.

**CERTIFIED QUESTION OF LAW ANSWERED AS SET FORTH ABOVE. COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

MURPHY and ADKINS, JJ., dissent.

ADKINS, J., dissenting, in which MURPHY, J., joins.

Respectfully, I dissent. At the core of the American judicial system lies the notion that litigants have the right to be heard by the court that passes judgment on their case. This is reflected in the principle that we will not consider or decide cases on an issue that was not briefed by the parties. *See Menefee v. State*, 417 Md. 740, 746 n. 9, 12 A.3d 153, 157 (2011) (observing that because a particular issue "was not briefed by either party, it is not, at present, before this Court"); *Lubin v. Agora, Inc.*, 389 Md. 1, 26 n. 13, 882 A.2d 833, 848 (2005) (declining to consider "an important issue" of law that was "not briefed or argued"); *Sweeney v. Sav. First Mortgage, LLC*, 388 Md. 319, 325 n. 8, 879 A.2d 1037, 1040 (2005) (declining to address an issue that was "not briefed or argued"); *Alexander & Alexander, Inc. v. B. Dixon Evander & Assocs., Inc.*, 336 Md. 635, 657 n. 19, 650 A.2d 260, 271 (1994) (same); *Mercantile–Safe Deposit & Trust Co. v. Purifoy*, 280 Md. 46, 59, 371 A.2d 650, 658 (1977) ("Nor do we express any view with respect to the specific issue raised by appellants, but

not briefed by appellees, nor presented as a certified question by the Fourth Circuit, of whether appellants' interests under the trust instruments were alienable[.]").

The Majority opinion deprives these litigants of that right by deciding an issue not raised by the certified question, not briefed by the parties, and not mentioned at oral argument. As the majority acknowledges, the parties "focused their attention on whether the public policy exception to *lex loci delicti* should be invoked. By so arguing, the parties necessarily assumed that the filing requirement is part of Maryland's substantive law." Maj. Op. at 658, 31 A.3d at 130. The Majority, however, strays from this issue to resolve a question the federal court had not asked and the parties had not briefed: whether the Act's filing requirement is substantive or procedural. It then decides that, although the federal court assumed the filing requirements of the Act were substantive for the purposes of *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), we may conclude the opposite for purposes of applying choice-of-law principles. Relying on that principle, it proceeds to decide that the Act is procedural, and thus, *lex loci* does not apply. The Majority thus renders the briefs filed by the parties irrelevant.

I submit that the decision to decide this non-certified question is not only inconsistent with general principles of fairness, but also inconsistent with our jurisprudence relating to an analogous certification rule that permits the Court of Special Appeals to certify a question of law to this Court. *See* Maryland Rule 8–304(c). In *Barnett v. State,* 307 Md. 194, 203–04, 512 A.2d 1071, 1076 (1986), we explained:

> This Court has power under Rule 815, "Procedure in Certified Cases from Court of Special Appeals," to modify a question so certified. That power to modify was intended to give this Court as much flexibility in answering the substance of a question certified by the Court of Special Appeals as would a provision expressly authorizing question modification contained in an order of certification from a federal court[.] [1]

We were careful to qualify our exercise of the power to modify, however, by considering fairness to the parties:

> So long as there is no prejudice to either party, this Court's exercise of the power to modify is not restricted to the time when the application for certification is granted. **In the instant matter both parties have briefed the substantive issue of waiver,** in addition to their positions respecting interpretation of Rule 4–231(c)(1). We therefore modify the certified question to read: "Did Barnett waive all rights involving presence so that the State could try him in absentia?" (Emphasis added.)

*Id.* at 204, 512 A.2d at 1076. I take no position on the issue the majority decides. I dissent because I think it only fair that we either resolve the case on the certified question or give the parties the opportunity to brief and argue whether the Act's filing requirement is substantive or procedural.

The latter is not an open and shut matter. A similar issue was addressed in *Davison v. Sinai Hosp. of Balt., Inc.,* 462 F.Supp. 778, 780 (D.Md.1978), *aff'd, Davison v. Sinai Hosp. of Balt., Inc.,* 617 F.2d 361 (4th Cir.1980). The *Davison* court held that the word "procedural," in an identical part of the Act, does not apply toward resolving the substantive-procedural distinction in the choice-of-law decision. *Id.* The *Davison* court instead reasoned that the statutory provision "was merely intended to indicate that the legislature was not attempting

---

1. Rule 8–304(c) is similar, but not identical to the old 815(b). The former reads as follows:

 Rule 8–304. Certification from Court of Special Appeals.

 * * *

 (c) Disposition of Certification. The Court of Appeals may refuse the certification or may issue a writ of certiorari that (1) accepts the certification as submitted, (2) modifies the questions of law certified, (3) includes the entire action although only a question of law was certified, or (4) limits review to only a question of law although the entire action was certified. The Clerk of the Court of Appeals shall send the order refusing certification or the writ of certiorari to the Court of Special Appeals and to the parties.

to create a new cause of action in passing this statute." *Id.* It concluded that the comparable Act was substantive.

I conclude the parties should be given the opportunity to address whether the Act is procedural or substantive for purposes of a choice-of-law analysis, before we throw the case out of court based on our resolution of that issue.

Judge MURPHY authorizes me to state that he joins in the views expressed in this dissent.